George BIRCH, Administrator *v.* Sue G. COLEMAN

CA 84-378                                    691 S.W.2d 875

Court of Appeals of Arkansas
Division II
Opinion delivered June 19, 1985

*Spears, Sloan & Johnson*, for appellant.

*Skillman & Durrett*, for appellee.

LAWSON CLONINGER, Judge. Appellant, George Birch, brings this appeal from an order of the Probate Court of Crittenden County, admitting a will to probate which was executed on February 5, 1981, by his uncle, James Holcomb. We think the chancellor erred in admitting the will to probate and reverse.

The evidence established that on December 10, 1980, the decedent's wife died and appellee, Sue Coleman, who was not related to the decedent, filed a petition to have herself appointed guardian of the person and estate of the decedent. At that time, the decedent was 85 years old, hospitalized with a heart attack, and physically unable to manage his affairs. On December 23, 1980, the court granted appellee's petition and entered an order appointing appellee guardian of the decedent. On February 1, 1981, the decedent moved into appellee's home and for the most part resided there until his death on October 22, 1982. During the twenty-two month period in which appellee acted as decedent's guardian, she opened at least six different guardianship accounts at a branch bank in Marion, Arkansas, and expended a substantial amount of the decedent's money on furniture and clothes for herself. According to appellee, all of the expenditures were made at decedent's request.

After the decedent's death, two wills purportedly executed by the decedent were filed for probate. One was dated December 30, 1980, and named appellant as primary beneficiary. A second will was dated February 5, 1981, which was five days after decedent's move into appellee's house, and named appellee as primary beneficiary.

The circumstances surrounding the making of the second will are relevant to this appeal. Thomas G. Montgomery, an attorney, did the legal work for appellee in relation to the guardianship estate for the decedent. Mr. Montgomery testified that appellee asked him to prepare a will for the decedent and that appellee asked, "Well, what if he wants to leave something to me?" Mr. Montgomery replied, ". . . in that case I can't prepare the will, you'll have to get somebody else to do it." Following that conversation with Mr. Montgomery, appellee testified that at the decedent's request, she called a woman named Judy Gobbell to come to the house and talk to decedent about his will. Miss Gobbell was not an attorney but was employed at the bank in Marion and had been instrumental in setting up the numerous guardianship accounts for appellee. There was testimony that appellee and Miss Gobbell occasionally saw each other on a social basis.

Miss Gobbell testified that she went to appellee's house and spoke with the decedent who gave her some will forms and asked her to prepare a will for him. She testified that she proceeded to draft the will and that she read this will over the telephone to Thomas G. Montgomery who said the will was fine. Mr. Montgomery denied that this conversation took place. Miss Gobbell testified that she then took the will to appellee's house where she read it to the decedent and witnessed his signature on it. A woman named Kay Osborne also witnessed the decedent's signature at that time and appellee testified that she paid Miss Osborne $15.00 for coming to witness the will. Miss Gobbell testified that during the reading and signing of the will, appellee was in the house but not in the room with decedent, and that appellee never saw the will.

Appellant petitioned the court to contest the second will being admitted to probate for two reasons. He alleged first that the decedent was not mentally competent to execute the will and

second, that appellee exercised undue influence over the decedent and that she procured the will. After a hearing, the court found that the decedent was competent to make and execute the will of February 5, 1981, and that appellee did not exercise undue influence over the decedent to make the will. The court ordered that the second will be admitted to probate and appellant brings this appeal from that order.

Appellant first argues that the court erred in not applying a presumption of undue influence in this case. Appellant contends that because appellee was decedent's guardian, the relationship was confidential and therefore a will leaving most of the decedent's estate to appellee should have been presumptively void. Appellant also argues that the evidence established that appellee "procured" the will and thus the court should have shifted the burden of proof to the appellee to show that the decedent "had both the mental capacity and freedom of will to render the will valid." Appellant admits that the case is one of first impression and that, normally, the one who contests a will must prove undue influence. However, appellant urges this court to apply presumption of the undue influence in cases where a ward makes his guardian the primary beneficiary of his will.

For support, appellant cites several cases from other jurisdictions where the courts have applied a rebuttable presumption of undue influence in situations where guardians have been named principal beneficiaries of their wards' wills. For instance, in *In Re Cowdry's Will*, 77 Vt. 359, 60 A. 141 (1905), the executor, proponent and principal beneficiary of the will in issue, was also the guardian of the decedent before and at the time the will was made. The court held that there was presumption of undue influence which "did more than to take the burden of proof from the contestants and place it upon the guardian. It established prima facie the existence of such influence, and was sufficient to defeat the will unless and until it was overcome by counter-proof. . . ." *Id.* at 142. Also, in *Garvin's, Administrator v. Williams*, 44 Mo. 465 (1869), the court held that a guardian is in a confidential relation with his ward, that the most exact good faith is required of him, and that "it was incompetent for him to take a benefit for himself without showing that the benefit flowed from the free, unbiased, independent will and uninfluenced volition of his ward." *Id.* at 478. Finally, in *Pepin v. Ryan*, 133

Conn. 12, 47 A.2d 846 (1946), the court held that the guardian of the decedent failed to prove that her influence did not overcome the free agency and independence of the decedent, stating:

> Ordinarily, the burden of proving undue influence rests upon him who seeks to have a will set aside on this ground, but 'where the natural object of the testator's bounty is excluded from participation in his estate, where a stranger supplants children, and the will is in favor of . . . the guardian having charge of his person and estate . . . there is imposed upon the proponents of the will, upon the trial of the issue as thus raised, the obligation of disproving by a clear preponderance of evidence the affirmation of the actual exercise of undue influence by such beneficiaries of the will. *St. Leger's Appeal*, 34 Conn. 434, 450, 91 Am.Dec. 735; *Dale's Appeal*, 57 Conn. 127, 143, 17 A. 757.'

*Id.* at 847.

In response, appellee points out that the decedent was mentally competent to make the will, even though he was technically under a guardianship. Furthermore, appellee maintains that there is a question about the validity of the guardianship because the decedent had only a physical incapacity. We fail to see the merit in this argument. The evidence clearly established the existence of a guardianship relationship between appellee and the decedent. The decedent was bedridden and living at appellee's house. Appellee conducted substantially all of the decedent's financial transactions. She opened and maintained all of his bank accounts during the period of the guardianship. Appellee filed the petition to have herself appointed the decedent's guardian and she filed an accounting after his death. We do not think at this late date that appellee should be allowed to question the guardianship relationship. Based on these same facts, we do not think that appellee can deny that a confidential relationship existed also.

Arkansas courts have recognized a presumption of undue influence in various situations. For instance, in *Park* v. *George*, 282 Ark. 155, 667 S.W.2d 644 (1984), the court held that where the beneficiaries of the decedent's will had also procured the execution of the will, they had the burden of proving beyond a reasonable doubt that the decedent was not unduly influenced

and possessed the mental capacity to execute the will. In *Reeder v. Meredith*, 78 Ark. 111, 93 S.W. 558 (1906), the court recognized that a trustee, by virtue of his relationship to the beneficiaries of the trust, must assume the burden of proving the fairness of a transaction with the beneficiary of the trust which benefits himself. In *Young v. Barde*, 194 Ark. 416, 108 S.W.2d 495 (1937), the court recognized the general rule that where special trust and confidence exists between the parties to a deed, the gift to the party holding the dominent position is prima facie void. The court stated that gifts "will be scrutinized with the most jealous care when made between parties who occupy such confidential relation as to make it the duty of the person benefitted by the contract or bounty, to guard and protect the interest of the other and give such advice as would promote those interests." *Id.* at 419.

More on point is the case of *Gingrich v. Bradley*, 232 Ark. 884, 341 S.W.2d 33 (1960), where the appellant argued that the appellee, decedent's spiritual adviser, occupied a confidential relationship with the decedent and had both the motive and opportunity to exert undue influence over her, and so the will naming him primary beneficiary should have been set aside. The court recognized that "the circumstances surrounding the execution of this will call for the closest scrutiny and may even give rise to a rebuttable presumption that undue influence was exercised." *Id.* at 890. However, the court went on to find that the weight of the evidence did not require that the will be set aside. Then, in *Union National Bank v. Leigh*, 256 Ark. 531, 509 S.W.2d 539 (1974), the court stated that although normally the burden of proving the invalidity of a will is upon the contestants, in this case the proponent of the will, who was the decedent's wife, had the burden of overcoming a rebuttable presumption of undue influence because of her confidential relationship with the decedent and because she was instrumental in the execution of the will. However, the court went on to state that the widow's participation in the drafting and execution of the will was not so dominating or overpowering as to call for proof beyond a reasonable doubt.

We think the above cases clearly support appellant's argument for the application of a presumption of undue influence in the instant case. However, as in the *Union National Bank* case, we do not think appellee's participation in the execution of the

decedent's will was so dominating as to call for proof beyond a reasonable doubt, which appears to be the standard in procurement cases. *See, e.g., Neal* v. *Jackson,* 2 Ark. App. 14, 616 S.W.2d 746 (1981). We agree with appellee that the evidence is insufficient to enable us to find that she procured the will. However, we do not think that a finding of procurement is a necessary prerequisite to our shifting the burden of proof to the proponent of the will. We hold that where a ward names his guardian as a principal beneficiary of his will, the existence of undue influence on the part of the guardian should be presumed and the will should be prima facie void, unless the guardian can show by clear preponderance of the evidence that he took no advantage of his influence with the ward and that the ward's testamentary gift was a result of his own volition.

On appeal from probate courts, we review the case *de novo* and will affirm the order of the probate judge unless his findings are clearly erroneous or clearly against the preponderance of the evidence. Rule 52(a) of the Arkansas Rules of Civil Procedure; *Greenwood* v. *Wilson,* 267 Ark. 68, 588 S.W.2d 701 (1979). In this case, we think the evidence is fully developed on the issue of undue influence and based on our *de novo* review, we find that the probate judge's finding of no undue influence is not consistent with the law we have declared herein, and is clearly against the preponderance of the evidence.

The decedent had executed a will in favor of appellant, his nephew, about five weeks before he executed the will in favor of appellee. Several longtime friends of the decedent testified that he was very close to his nephew and considered him like a son. There was no evidence of any rift occurring in that relationship during the five weeks after the decedent named appellant as his principal beneficiary. The evidence does establish that during that time, appellee was appointed decedent's guardian and that decedent moved into appellee's house but remained bedridden. There was evidence that appellant was having health problems at the time and that this prevented his visiting with his uncle. Other friends of the decedent testified that they did not visit him at appellee's house because she made them feel uncomfortable.

Several days after decedent moved in with appellee, she asked a business and social acquaintance of hers, who was not an

attorney, to assist decedent in drawing up another will. This followed a refusal by her regular attorney to prepare a will in which appellee was to be a beneficiary. At that time, decedent was totally dependent on appellee for his personal care and his financial management. It is clear that in the ordinary course of affairs, decedent had the most implicit faith in appellee and that she exercised a considerable amount of influence over him. This is evidenced by her actions and by the expenditures she made in her capacity as decedent's guardian.

We think that when all these circumstances are combined they support our conclusion that appellee failed to show that decedent had the freedom of will necessary to make a legally valid will. We reverse and direct the probate court to dismiss the order admitting the will of February 5, 1981 to probate.

Because we have found the will to be invalid, we do not need to discuss appellant's third argument, that the proof of will is not in compliance with statutory requirements.

Reversed.

GLAZE and MAYFIELD, JJ., agree.