148

Marie HIGGS et al. *v.* ESTATE OF Wilton HIGGS

CA 93-1186                                      892 S.W.2d 284

Court of Appeals of Arkansas
En Banc
Opinion delivered February 8, 1995

*Bramblett & Pratt*, by: *Eugene D. Bramblett*, for appellants.

*Mike Kinard*, for appellee.

JOHN E. JENNINGS, Chief Judge. This probate case is a will contest. Wilton Higgs was born in 1901 and lived most of his life in Locust Bayou. His wife, Gladys, died in 1984. The two

of them had no children. On October 10, 1985, Wilton Higgs filed a petition in Calhoun County Probate Court asking that his brother, Herman Higgs, be appointed conservator of his estate for reasons of Wilton's old age and physical disability. On the same date Wilton executed a will prepared by Mr. Searcy Harrell, a Camden attorney. In the will, he left $1,000.00 to Antioch Primitive Baptist Church. The rest of his estate he left to his brother, Herman Higgs, in trust for a third brother, Aubrey Higgs. Aubrey was a deaf mute who lived on the family home place. The 1985 will also provided:

> C. This trust shall terminate upon the death of my brother, Aubrey L. Higgs, and any balance of principal or any undistributed income shall be paid to my brother, P.D. Higgs, and my brother, Herman H. Higgs, equally, share and share alike. If each shall predecease me, the interest herein left to them shall go to their heirs at law.

> D. If my said brother, Aubrey L. Higgs, predeceases me, then there shall be no trust and my Executor shall distribute this portion of my estate directly to P.D. Higgs and Herman H. Higgs, equally, share and share alike, without any restrictions whatsoever. If each shall predecease me, the interest herein left to them shall go to their heirs at law.

In July 1986, P.D. Higgs died. He was survived by his wife, Marie, and daughter, Linda Wood, the appellants here.

In July 1988, Wilton executed a new will, prepared by Mr. Harrell, which was substantially the same as the 1985 will, except that it omitted P.D. Higgs and his heirs as contingent beneficiaries.

In March 1992, Wilton Higgs died and in June of that year his 1988 will was admitted to probate. Subsequently, Linda Wood filed a petition contesting the will, alleging that Wilton was mentally incompetent and subjected to undue influence at the time of its execution. After conducting a hearing, the probate judge entered an order upholding the 1988 will and the will contestants have appealed.

Appellants rely on two points: (1) the probate court erred

by not finding the will dated July 22, 1988, was prima facie void because of the confidential relationship between the testator and appellee, and by not requiring that appellee show by a clear preponderance of the evidence that he took no advantage of his influence with the testator, and (2) the probate court's finding of no undue influence is not consistent with the law and is clearly against the preponderance of the evidence. We find no error and affirm.

Appellants' first point is a procedural one and they rely on *Birch* v. *Coleman*, 15 Ark. App. 215, 691 S.W.2d 875 (1985). There we said:

> We agree with appellee that the evidence is insufficient to enable us to find that she procured the will. However, we do not think that a finding of procurement is a necessary prerequisite to our shifting the burden of proof to the proponent of the will. We hold that where a ward names his guardian as a principal beneficiary of his will, the existence of undue influence on the part of the guardian should be presumed and the will should be prima facie void, unless the guardian can show by clear preponderance of the evidence that he took no advantage of his influence with the ward and that the ward's testamentary gift was a result of his own volition.

At the hearing on the validity of the will, after Herman Higgs had testified, the following colloquy took place:

> Mr. Bramblett [appellants' counsel]: At this point, the contestants ask that the court declare as a matter of law and evidence that Herman Higgs be required to go forward with the proof regarding undue influence and the other issues that have been raised based upon the fiduciary relationship between Herman Higgs and Wilton Higgs when the second and last will was executed.

> Mr. Kinard [appellee's counsel]: Our position is that Herman Higgs was not the primary beneficiary of this will and Herman Higgs has not been shown to have done or caused anything to occur which meets the criteria of procurement and further there has been no evidence to tend to prove there was undue influence. Our position is that the

evidence presented falls short of shifting the burden at this point.

The Court: The proponent's objection is overruled for the reasons that the will was admitted without notice and there was a confidential relationship as conservator which served to shift the burden of going forward to the proponents of the will.

Following the hearing the court in a memorandum opinion found beyond a reasonable doubt that on July 22, 1988, Wilton Higgs knew the nature and extent of his property and to whom he was leaving his property; that Herman Higgs was in a confidential relationship with the decedent; and that there was nothing in the record that reflects that Herman Higgs procured the will or exercised undue influence over his brother.

We hold that the court's statement made during the course of the hearing which shifted the burden of going forward to the proponent of the will was correct. In *Hiler* v. *Cude*, 248 Ark. 1065, 1082, 455 S.W.2d 891, 900 (1970), the supreme court said:

We adhere to the rule that the burden of proving mental incompetency, undue influence and fraud which will defeat a will is upon the party contesting it. We hold this burden, in the sense of the ultimate risk of nonpersuasion, never shifts from the contestant. This does not however, conflict with the rule concerning the burden of going forward with the evidence or burden of evidence. As stated in 29 Am. Jur. 2d, 156, Evidence Section 125: "In short, the burden of proof, in the sense of the ultimate risk of nonpersuasion, never shifts from the party who has the affirmative of an issue, although the burden of going forward with the evidence may shift at various times during the trial from one side to the other as evidence is introduced by the respective parties."

This statement of law has been followed by the supreme court ever since. *See Able* v. *Dickinson*, 250 Ark. 648, 467 S.W.2d 154 (1971); *Greenwood* v. *Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979); *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984). From this record we are persuaded that the probate judge properly

required the proponent of the will to go forward with the evidence, i.e., to produce evidence establishing that the will was not a product of undue influence.

Appellants also contend that the probate judge's finding that there was no undue influence is clearly against the preponderance of the evidence. At the hearing, Herman Higgs testified that he was seventy-five years old. He had worked for the United States Marshall's Office as a deputy for twenty-three years, and had previously worked for the El Dorado Police Department for twenty-seven years. He testified that Wilton had been found wandering about the street, unclothed, in September of 1985. He testified that after he was appointed conservator of Wilton's estate he did not report any of his handling of Wilton's business affairs to the probate court.

When the 1988 will was drawn Herman took Wilton from Locust Bayou to Camden to see Mr. Harrell. Herman testified that he did not go into Mr. Harrell's office with Wilton when the will was discussed. He testified that he placed Wilton in a nursing home in March of 1990.

Herman Higgs testified that Wilton Higgs' estate consisted of $150,000.00 in cash, and that he transferred ownership of those funds from Wilton to himself. He testified that his purpose in doing this was "to get the difference between his nursing home care expenses and his social security paid for by either the state or federal government."

Herman Higgs testified that the 1988 will was entirely Wilton's idea and that he had not talked to Wilton about changing his will. He said the only reason Wilton gave him for wanting to change his will was that he was having problems with Marie Higgs and Bill Spencer (Marie's son) regarding Bill's drinking. Jeffery Rogers, a Camden attorney with the firm of Roberts, Harrell, and Lindsey, testified that he remembered Wilton and Herman Higgs coming to the office on July 22, 1988. He testified that he and Herman had visited while Wilton went into Mr. Harrell's office. Mr. Rogers signed the will as one of the witnesses and testified that he did not observe anything to give him any reason to believe that Wilton Higgs was not of sound mind. He testified that he saw no indication of undue influence.

Searcy Harrell testified that he handled the conservatorship for Wilton Higgs, and that he thought it was a good idea because Wilton was physically weak and had been emotionally upset. Mr. Harrell did not think Wilton was mentally incompetent, but did feel he was subject to the influence of other people.

Regarding the July 1988 will, Mr. Harrell testified that Herman and Wilton came to the office together. He testified that he believed Wilton Higgs was of sound mind and not subjected to undue influence when the will was executed. On cross-examination Mr. Harrell testified that his recollection was that Herman Higgs told him, in Wilton's presence, what Wilton wanted to do with his property.

Appellant, Marie Higgs, testified that she did not find out that her child had been cut out of Wilton's will until the will was probated. She testified that Bill Spencer did have a drinking problem but she did not know whether he did on July 22, 1988. She testified that after her husband, P.D. Higgs, died in 1986 Wilton got progressively worse. She testified that Wilton would tell her that his mother and his wife, both dead for some time, had just left his home. She testified that she thought Wilton was competent in 1985, but that he was just confused and acting strangely.

Bill Spencer testified that there were times from 1986 through 1988 when Wilton became very disoriented. Mr. Spencer also testified that Wilton made statements indicating that he believed his mother and wife were still alive.

Steve Woodson was the grandson of Effie Higgs, a deceased sister of Wilton Higgs. He testified that when he stopped by to visit Wilton in the spring of 1988 he would not immediately recognize him. He testified that in his opinion Wilton was not competent in the spring of 1988.

Appellants argue, in effect, that on this evidence the probate judge had no choice but to make a finding of undue influence. In the case at bar, as in many undue influence cases, much depends on the credibility of the witnesses. Herman Higgs testified that the 1988 will was entirely Wilton's idea, and that he had done nothing to encourage Wilton to make the change. The lawyer who drafted the will, Mr. Harrell, testified that Wilton Higgs was mentally competent and that he saw no indication of undue influ-

ence. The probate judge evidently believed the testimony of these witnesses. The trial court's finding of no undue influence is not clearly against the preponderance of the evidence.

Affirmed.

ROBBINS, J., dissents.

JOHN B. ROBBINS, Judge, dissenting. My review of the evidence before the probate court causes me to believe that the preponderance of the evidence proved that the testator, Wilton H. Higgs, was subjected to the undue influence of Herman Higgs when he executed his will on July 22, 1988. However, our standard of review is somewhat higher than merely weighing the preponderance of the evidence. We review the evidence to determine whether the trial court's ruling is clearly against the preponderance of the evidence or is clearly erroneous. Ark. R. Civ. P. 52(a). If the appellants had retained the burden of proving undue influence throughout the trial, I could not disagree with the majority's conclusion that the trial court's finding of no undue influence is not clearly against the preponderance of the evidence. However, once appellants, as opponents of the will, presented proof that Wilton Higgs executed his will designating Herman Higgs as a principal beneficiary while Herman Higgs was standing in a fiduciary relationship with the testator, the existence of undue influence on the part of Herman Higgs became a presumed fact. *Birch* v. *Coleman*, 15 Ark. App. 215, 691 S.W.2d 875 (1985). Herman Higgs then shouldered the burden of proving by a clear preponderance of the evidence that he took no advantage of his influence with Wilton Higgs and that the testamentary gift made to him was a result of Wilton's own volition. *Id.*

The probate judge found that there was a confidential relationship between Wilton Higgs and Herman Higgs because Herman was the conservator of Wilton's estate. However, the court held that this only served to shift to the proponents of the will the burden of going forward with the evidence. At the conclusion of the trial the court held that "there is nothing in the record that reflects Herman H. Higgs procured the will or exercised undue influence over his brother;" and that "there is no evidence that, in fact, W. H. Higgs was subject to being led or influenced into doing anything." These findings ignore the burden of proof placed on Herman H. Higgs by *Birch* v. *Coleman, supra,* to prove by a

clear preponderance of the evidence that he took no advantage of his influence with Wilton H. Higgs and that Wilton's testamentary gift to him was the result of his own volition. To find an absence of proof of undue influence does not equate to finding that Herman H. Higgs proved by a clear preponderance of the evidence that his undue influence, presumed as a matter of law, was not in fact exercised by him over the testator. I am persuaded that the trial court failed to apply the proper burden of proof in reaching its decision.

The majority opinion quotes from *Hiler* v. *Cude*, 248 Ark. 1065, 455 S.W.2d 891 (1970), as authority for treating the *Birch* v. *Coleman* burden of proof as simply one of going forward with the evidence rather than a burden of proving the nonexistence of undue influence. I disagree that *Hiler* v. *Cude, supra*, has relevance to the case before us. First, *Hiler* v. *Cude* did not involve a confidential relationship situation as was involved in *Birch* v. *Coleman* and as is involved in the case at bar. *Hiler* and the other three cases cited by the majority, *Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984), *Greenwood* v. *Wilson*, 267 Ark. 68, 588 S.W.2d 701 (1979), *Able* v. *Dickenson*, 250 Ark. 648, 467 S.W.2d 154 (1971), are distinguishable because each of them involved allegations that the principal beneficiary procured the testator's will.

Secondly, and more importantly, Ark. R. Evid. 301(a), which is identical to Unif. R. Evid. 301, provides the following:

> **Rule 301. Presumptions in general in civil actions and proceedings.** — (a) Effect. In all actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence.

This rule and the principal enunciated in *Birch* v. *Coleman, supra*, could not be any clearer in placing an affirmative burden on the proponent of a will which designated the testator's conservator as a principal beneficiary to prove that the nonexistence of undue influence is more probable than its existence.[1] *See Park* v. *George,*

---

[1] The burden of proof under *Birch* v. *Coleman, supra*, actually increases the burden to a "clear preponderance" rather than merely "more probable than" not.

*Personal Rep.*, 282 Ark. 155, 667 S.W.2d 644 (1984). The court's decision was based upon its finding of an absence of evidence to show undue influence. There was no finding that Herman H. Higgs proved by a clear preponderance of the evidence the nonexistence of the exercise of undue influence which should have been presumed. *Hiler* v. *Cude, supra, Rose* v. *Dunn, supra, Greenwood* v. *Wilson, supra,* and *Able* v. *Dickenson, supra,* all predate the supreme court's adoption of the Arkansas Rules of Evidence on October 13, 1986.[2] To the extent the cited cases treat a presumed fact contrary to Ark. R. Evid. 301(a), they are no longer precedential.

The United States Supreme Court did not elect to adopt Unif. R. Evid. 301 for the federal courts, choosing rather the following:

> **Rule 301 — Presumptions in general in civil actions and proceedings.** In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

Fed. R. Evid. 301. The majority's treatment of the presumption in this case is consistent with the federal rule. However, this is not the rule in Arkansas. Our supreme court could have adopted a modified form of Rule 301 such as the federal rule, but opted for Unif. R. Evid. 301 verbatim. In *Looney* v. *Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992), our supreme court affirmed a probate court in a procurement case which found that the procurer failed to rebut a presumption of undue influence. Although the burden of going forward versus the risk of nonpersuasion was not expressly discussed, it is implicit in the court's opinion that it recognized that the risk of nonpersuasion was on the proponent-procurer of the will.

---

[2]The Arkansas legislature attempted to adopt the Uniform Rules of Evidence during an extended session in 1976. However, in *Ricarte* v. *State*, 290 Ark. 100, 717 S.W.2d 488 (1986), the supreme court held that this act was invalid because the extended session of the legislature was unlawful. Furthermore, neither *Hiler* v. *Cude, supra,* nor the other cases cited in the majority opinion make any reference to Rule 301.

I would reverse and remand this case to the probate court for application of the proper burden of proof.