(749 P.2d 1052)
No. 60,021

In the Matter of the Estate of MAGGIE ALEXANDER, Deceased.

Opinion filed February 11, 1988.

*Dan H. Myers,* of Myers & Pottroff, of Manhattan, for the appellants.

*Robert L. Constable,* of Law Offices of Robert L. Constable, Chartered, of Salina, for the appellee.

Before ABBOTT, C.J., STEVEN P. FLOOD, District Judge, assigned, and BARRY A. BENNINGTON, District Judge, assigned.

FLOOD, J.: The sole issue in this appeal is the applicability of K.S.A. 59-605 to a situation in which the scrivener of a will is the wife of the principal beneficiary.

The testator, Maggie Alexander, and her husband had four children; Roy, Russell, Harold, and Lulu Lee. In 1957, Mr. and Mrs. Alexander gave a farm to each of the three boys and the cash equivalent to Lulu Lee. Following her husband's death in 1963, Maggie Alexander lived with her son Harold until his marriage to Arlyss in 1973, at which time Harold and Arlyss moved a mile down the road to set up housekeeping. Between 1963 and 1979 when Maggie entered a nursing home, Harold alone, and then Harold and Arlyss attended to most of Maggie's needs, looking in on her frequently and providing her with the bulk of her transportation needs. After Harold and Russell had a falling out in 1973, Russell never again saw Maggie before her death. Maggie and her daughter Lulu Lee also had a strained relationship, but that softened somewhat during Maggie's final years in the nursing home.

In 1969, Maggie made out a will by which she left her estate equally to her sons Harold and Roy, excluding Lulu Lee and Russell. In 1978, she made out a second will with the same provisions, except she left one dollar each to Russell and Lulu Lee. In 1979, by letter to Harold, Maggie evidenced an intent to leave her entire estate to Harold and, earlier that same year, she transferred her savings to Harold.

After Maggie's move to the nursing home in 1979, Lulu Lee began to visit Maggie frequently and apparently worked herself back into Maggie's favor.

On April 16, 1980, Lulu Lee, ostensibly at Maggie's direction, went to see attorney Frank Oberg and had a new power of attorney made out, naming Lulu Lee and Russell as Maggie's attorneys in fact. The next day, again ostensibly at Maggie's direction, Lulu Lee went to see attorney Wayne Ryan and had a will prepared, leaving Maggie's estate to her four children in equal shares and naming Lulu Lee and Russell as co-executors. This will was read and explained to Maggie by attorney Ryan and was duly witnessed by his two secretaries.

Subsequently, Maggie advised Arlyss that she had been tricked into signing some papers and wanted a new will made out leaving her entire estate to Harold. Arlyss drafted a copy of the new will, went over it with Maggie, and then on May 3, 1980, Maggie executed the will before Arlyss's mother and sister.

After Maggie's death in February of 1985, Russell and Lulu Lee offered the will dated April 17, 1980, for probate, and Harold offered the will dated May 3, 1980, for probate. The trial court admitted the May 3, 1980, will to probate and denied admission to probate of the will dated April 17, 1980.

The trial court found that the record did not contain evidence showing that Harold discussed the will with Maggie or participated in having it executed. The trial court further found there were not sufficient facts and circumstances to justify a finding that Arlyss and Harold were a fiduciary to each other or that Arlyss was a fiduciary to Maggie when she took Maggie's instructions and prepared her will to impute such a relationship to Harold; therefore, K.S.A. 59-605 did not apply. With respect to the exercise of undue influence by either Arlyss or Harold, the court reached the following conclusion:

"Here the evidence shows a pattern of Harold caring for Maggie over many years. The evidence shows an estrangement between Maggie and Russell that continued until her death, and an estrangement between Maggie and Lulu Lee that existed for years until the latter began to visit Maggie in the nursing home. The evidence shows that Maggie, in return for his years of devotion, wanted Harold to take her estate to the exclusion of her other children. If any evidence smacks of undue influence, it is that which suggests that after years of estrangement, Maggie would execute a will in April naming Lulu Lee and Russell as co-executors. The Court finds that the petitioners Lulu Lee and Russell have failed to show that the May 3, 1980 will was the result of undue influence."

We are, of course, bound by the trial court's findings of fact, but not by the trial court's conclusions of law. K.S.A. 59-605 provides:

"If it shall appear that any will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall affirmatively appear that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

With reference to the latest will dated May 3, 1980, it is readily apparent that Maggie Alexander did not have independent advice. By the same token, the beneficiary is Harold Alexander, who was not the scrivener of the will. Rather, it was his wife Arlyss who was the scrivener.

In *In re Estate of Schippel*, 169 Kan. 151, 161, 218 P.2d 192 (1950), it was recognized that under this statute there might be circumstances in which a person occupying a position of a "go-between" could be considered to be held the one writing or preparing a will within the meaning of the statute. However, here, the trial court found that the record did not contain any evidence that Harold discussed the will with Maggie or participated in having it executed, and such a finding has not been challenged on appeal. In *In re Estate of Kern*, 239 Kan. 8, 716 P.2d 528 (1986), it was recognized indirectly that the statute might apply if the principal beneficiary had made suggestions to the scrivener concerning the preparation of the will. However, the evidence in this case seems to be that Arlyss prepared the will pursuant to Maggie's request, without any input from Harold.

The question, then, before this court is whether the actions of Arlyss as scrivener must, under the statute, be imputed to Harold solely because of their husband and wife relationship. The closest Kansas case dealing with this question seems to be *In re Estate of Robinson*, 231 Kan. 300, 644 P.2d 420 (1982), relied upon by the trial court in making its decision in this case. In that case the wife of the testator was the principal beneficiary and was, arguably, the go-between with the family lawyer who had drafted the will; furthermore, she had suggested the contingent beneficiaries named in the will. The trial court held that, under those circumstances, 59-605 had been violated. The Supreme Court reversed, holding that the relationship of husband and wife alone was not sufficient to create the confidential or fiduciary relationship between the beneficiary and the testator required by K.S.A. 59-605 and, further, that the action of the wife in suggesting contingent beneficiaries to the family lawyer did not make her the scrivener of the will. The case is distinguishable because it does not deal with the question presented here, which is whether a wife can ever be the scrivener of a will in which her husband is the principal beneficiary without violating the provisions of 59-605.

We have been cited to several decisions from other states where the issue has been addressed, although not necessarily in the context of a statute similar or identical to the one in Kansas. In *Estate of Trefen*, 86 Cal. App. 2d 139, 194 P.2d 574 (1948), a daughter-in-law had been instrumental in getting the decedent to make a new will disinheriting decedent's husband in favor of the daughter-in-law's husband, decedent's son by a prior marriage. The court there held in Syl. ¶ 10:

"Where a wife is active in obtaining the preparation and execution of a will making her husband the sole beneficiary, the activity of the wife is imputed to the husband."

However, in that case there was a factual finding that the wife of the beneficiary had exercised undue influence upon the decedent to disinherit the decedent's husband. This finding, in turn, was based upon the fact that the decedent had long expressed a testamentary preference for her husband, who had jointly helped her acquire the property in question.

In *In re Estate of Peterson*, 283 Minn. 446, 168 N.W.2d 502 (1969), an attorney who acted as scrivener induced his client to make a will disinheriting her relatives in favor of the attorney's own children. The court held that the act of the scrivener, who stood in a confidential relationship with the decedent, could be imputed to his children as beneficiaries to make out a prima facie case and sustain a finding of undue influence. Here, again, we have a case where on the facts a decedent, who stood in a confidential and fiduciary relationship with the scrivener, is induced by the scrivener to make out a will in favor of casual acquaintances, contrary to her expressed intent and desires.

In *Swenson v. Wintercorn*, 92 Ill. App. 2d 88, 234 N.E. 2d 91 (1968), an elderly testatrix had been persuaded by Mr. Green to make out a will in favor of his wife, Mrs. Green. Mrs. Green was not related to the testatrix. The Illinois court held that one who procures the execution of a will largely benefiting himself in the absence of others having equal claim on the bounty of the testatrix, who is enfeebled by age and disease, is faced with the presumption that he exercised undue influence. The court went on to say that undue influence may be the result of activities of third persons, as well as the result of activities of direct beneficiaries, and that insofar as Mr. Green may have been instrumental in influencing the testatrix to favor his wife, his activity may be imputed to his wife.

The most that can be said of these decisions is that where one who is a scrivener drafts, or procures a scrivener to draft, a will in favor of his or her spouse or son or daughter, such behavior allows a presumption of undue influence or makes out a prima facie case of undue influence or supports a decision of undue influence. This is particularly so when the beneficiary is not related to the testator, or the will is contrary to the long-expressed desires of the testator.

In this case the evidence is that Harold did not procure the making of the May 3, 1980, will by his mother, nor did he have any input into the making of the will. Further, Maggie's long-expressed testamentary intent as shown by the earlier wills, the letter, and the relationship generally was that she intended to make Harold Alexander her sole beneficiary. The trial court found that the evidence would not support a conclusion that

either Arlyss or Harold exercised undue influence on Maggie. The trial court further found that there was no fiduciary relationship between Arlyss and Harold or between Arlyss and Maggie which would permit imputing Arlyss's actions as scrivener of the will to Harold. We think these factual conclusions are correct. We also agree with the trial court that, merely because the relationship between the scrivener of a will and the principal beneficiary is one of husband and wife, there is not an automatic or per se violation of K.S.A. 59-605. To so hold, we believe, would take action by the legislature.

Affirmed.