**In the Matter of the Purported Last Will and Testament of Pearla M. NORTON a/k/a Pearla A. Norton, Deceased, James H. Norton, Jr., and Barbara K. Palese, Petitioners Below, Appellants,**

v.

**William NORTON and Mellon Bank (DE) National Association, Co–Executors and Trustees, Respondents Below, Appellees.**

No. 221, 1995.

Supreme Court of Delaware.

Submitted: Dec. 5, 1995.
Decided: Feb. 1, 1996.
As Modified on Denial of Rehearing Feb. 28, 1996.

---

Richard E. Franta, Wilmington, for Appellants.

Charles Gruver, III, Taylor & Gruver, P.A., Wilmington, for Appellees.

Before VEASEY, C.J., WALSH and HARTNETT, JJ.

PER CURIAM:

This is an appeal from a Court of Chancery decision, after trial, which admitted to probate the Last Will and Testament of Pearla Norton ("Mrs. Norton"). The validity of the will had been disputed by two of Mrs. Norton's children, the appellants, James H. Norton, Jr. and Barbara K. Palese, who contended that their mother lacked testamentary capacity and had been the subject of undue influence exerted by their brother, the appellee, William Norton ("William"). In this appeal, the appellants challenge only the Court of Chancery's ruling with respect to undue influence.

## I

The will in dispute was executed on July 17, 1989. Mrs. Norton had executed an earlier will in 1979 as part of a reciprocal will arrangement with her husband, James, Sr. ("James"). With the exception of small specific bequests to William, the reciprocal wills provided for distribution of their respective estates equally to the three children. After a stroke in 1986 left her partially paralyzed, Mrs. Norton became a resident of a nursing home in Claymont. William was a regular visitor to his mother at the nursing home while James visited her almost daily. The appellants appeared not to have had as close a relationship with their parents and there was some friction between them. William had been in business with his father and shared the same interest in racing cars and automotive mechanics. William lived close to his parents and during various illnesses he and his wife cared for the elder Nortons in their home.

In 1987, the elder Nortons executed Powers of Attorney in favor of William and he began to manage their financial affairs. In May 1989 William took his father to a lawyer to discuss a traffic citation James had received. The discussion led to the subject of new reciprocal wills which would leave the bulk of the estate to William with smaller specific bequests to the appellees. The lawyer drafted the new wills but James died on July 12, 1989, before executing the new will. Five days later the lawyer, who had spoken only to James and had never met Mrs. Norton, visited Mrs. Norton for the purpose of securing execution of the will. After meeting with the administrator of the nursing home to discuss Mrs. Norton's testamentary capacity and talking to Mrs. Norton for twenty minutes, the lawyer had Mrs. Norton execute the will. In view of the previous death of her husband, this will served to dispose of the Nortons' estate. Approximately a month later, Mrs. Norton executed a Declaration of Trust, Power of Attorney and Will which replicated the July 17 instruments. This

trust arrangement, at the suggestion of the lawyer, apparently was intended to facilitate William's duty as executor of his mother's estate. William was not present when either document was executed.

The Court of Chancery found that the testamentary scheme of Mrs. Norton's will reflected "logic—not undue influence." The court further determined that the will was consistent with the differing relationship between the parents and their children. To the extent that William exerted any influence, the court ruled it stemmed from his physical proximity and closer overall relationship with his parents and not from any untoward or improper attempt to overcome testamentary intention.

■ Our review of the factual findings of the Court of Chancery is a limited one. If those findings are supported by the record and logically derived, we accept them unless clearly wrong. *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671, 673 (1972). The Vice Chancellor correctly placed upon the petitioner-appellants the burden of proving undue influence. *In re Estate of West*, Del.Supr., 522 A.2d 1256, 1263 (1987). The elements of undue influence are: "(1) a susceptible testator; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and (5) a result demonstrating its effect" *Id.* at 1264 (citing *Nardo v. Nardo*, Del.Super., 209 A.2d 905, 912–13 (1965)). The elements are essentially fact-driven and, as here, often turn on questions of credibility. The Vice Chancellor thoroughly evaluated the evidence presented and applied the pertinent legal standards for determining undue influence. Our review of the record supports his conclusion that petitioners have failed to discharge their burden of proof. Accordingly, we affirm.

## II

■ Our affirmance serves to uphold the validation of the will in dispute. Although the question of testamentary capacity was not the principal focus of this appeal, we take the occasion to emphasize the importance for a lawyer who drafts a will, particularly for an aged or infirm testator, to be satisfied concerning competence and to make certain that the instrument as drafted represents the intentions of the testator. In a recent case before this Court, *In re Estate of Waters*, Del.Supr., 647 A.2d 1091 (1994), we noted the ethical hazards facing a will scrivener who becomes a witness in a will contest case. In *Waters*, as here, the lawyer-scrivener never met the testatrix prior to the time of execution of the will. We recognize that, in the case of reciprocal wills to be executed by husband and wife, previous direct communication with one spouse may suffice, particularly where the absent party is known to be ill or infirm. But direct communication which precedes drafting of the instrument should be the norm if the lawyer is to discharge his obligation of assessing testamentary competence. *See Lovett v. Estate of Lovett*, Ch.Div., 250 N.J.Super. 79, 593 A.2d 382, 386 (1991). Here, the lawyer who drafted Mrs. Norton's will did not meet her until the date of execution and then only for the purpose of presenting a completed document for signature. In this case, such an approach undoubtedly contributed to the uncertainty concerning the testatrix's mental capacity and furnished a basis for questioning by those adversely affected by the terms of the will.

The judgment of the Court of Chancery is AFFIRMED.