**In re The LAST WILL AND TESTAMENT of Viola L. MELSON.**

**Joseph N. MELSON, Jr., Petitioner Below, Appellant,**

v.

**John A. MELSON, personal representative of the Estate of Viola L. Melson, Respondent Below, Appellee.**

No. 315, 1997.

Supreme Court of Delaware.

Submitted: March 3, 1998.

Decided: May 29, 1998.

Revised: June 5, 1998.

Rehearing Denied July 9, 1998.

Francis J. Trzuskowski, Trzuskowski, Kipp, Kelleher & Pearce, P.A., Wilmington, for Appellant.

John H. Benge, Jr., Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ., constituting the Court en Banc.

WALSH, Justice (for the majority):

In this appeal from the Court of Chancery, we examine the question of who should bear the burden of persuasion on claims of undue influence and lack of testamentary capacity in a will contest proceeding. The Court of Chancery placed the burden on the contestant, notwithstanding that the proponent, the testatrix's son, drafted the will and was its principal beneficiary. Although earlier Delaware authorities spoke ambiguously in this respect, we now hold that, under the circumstances of this case, the burden of persuasion lay with the drafter/beneficiary.

## I

Viola Melson ("Decedent") died on August 31, 1994 in a Wilmington hospital while being treated for an eating disorder. Seventeen days earlier she executed the will that is the subject in this litigation (the "1994 Will"). The 1994 Will substantially altered the property disposition plan of a prior will she had executed in 1977 (the "1977 Will") and changed the designated executor. Decedent was survived by two sons, Joseph Melson ("Joseph") and John Melson ("John"). Under the 1977 Will, Decedent's estate was essentially distributed equally to her sons. Under the 1994 Will, however, the principal beneficiaries are John and his two children, with Joseph's share reduced to one-quarter of the estate. John, who is not an attorney, drafted the 1994 Will using a software package designed for laypersons to prepare their own wills.

When John presented the 1994 Will for probate, Joseph challenged its validity on two grounds: (i) that Decedent lacked testamentary capacity; and (ii) that the will was the product of undue influence and coercion on the part of John. An evidentiary hearing was conducted by the Master in Chancery who issued a report recommending that the challenge to the 1994 Will be dismissed. Joseph filed exceptions to the Master's report, claiming, *inter alia*, that the Master had erred as a matter of law in assigning the relevant burden of persuasion. The Court of Chancery, reviewing the record *de novo*, concluded that, while John's conduct in drafting the 1994 Will "raises grounds for suspicion," Joseph had not sustained his burden of proving lack of testamentary capacity or undue influence. Accordingly, the Master's report upholding the will was approved. This appeal followed.

## II

In challenging the 1994 Will, Joseph sought to invalidate the will on dual grounds: lack of testamentary capacity and undue influence. While the two claims are conceptually distinct, they may implicate common presumptions and general burdens, particularly where, as here, the drafter of the will benefits materially under its terms. As the Mas-

ter noted, in this case, the evidence bearing upon the Decedent's mental state may be relevant to both issues of testamentary capacity and undue influence. Because we are required to review the formulation of a legal precept, *i.e.*, the burden of persuasion, our review of the Court of Chancery's approval of the will is *de novo*. *See Nardo v. Nardo*, Del.Supr., 209 A.2d 905, 911 (1965).

The factual basis for Joseph's claims that his mother lacked testamentary capacity and was unduly influenced by his brother illustrates the importance of the allocation of the burden of persuasion. In his decision approving the Master's report, the Chancellor recited the "undisputed facts" presented in the record, which we summarize.

At the time of her death, Decedent was within a week of her 82nd birthday. Since the death of her husband in 1977, she had executed two wills. The first, executed on December 14, 1977, had divided her estate equally between her two sons, with Joseph designed as her executor. The 1977 Will had been prepared by an attorney.[1]

During the years intervening between the execution of the two wills, Decedent relied upon both her sons for assistance in financial affairs. During a 1993 illness and hospitalization, she added Joseph's name to her checking account, although she continued to pay her bills independently. Also during 1993, John suggested changes in his mother's will and, in December 1993, he drafted a Power of Attorney for her that would have permitted him to transfer certain of her assets into a trust under which his children would be equal beneficiaries. This document was not executed, however, and Decedent continued to rely upon Joseph to guide her in certain financial dealings.

Decedent was hospitalized on August 10, 1994 for an eating disorder that, unexpectedly, resulted in her death. On the day she entered the hospital, both sons visited their mother and had a disagreement over Joseph's failure to place a certificate of deposit in John's name. The next day, according to John, Decedent asked him to prepare a new will which ensured that her beach property went to her grandchildren, John's two children, while the remainder of the estate was split equally between John and Joseph. John drafted a will for his mother using the software package and presented it to her the following day, August 12. According to John, his mother requested certain revisions involving specific bequests. John made the requested changes and left the will with her. Although John testified that he suggested to his mother that she review the will with other people, Decedent received no independent advice concerning the will drafted by John prior to its execution.

On August 14, 1994, Decedent executed the new will, along with two living wills (one prepared by the hospital) and a power of attorney. The wills were signed in the presence of three witnesses, a hospital employee and two individuals who were visiting another patient. The will was also made "self proved" through the certification of a notary public as permitted by 12 *Del.C.* § 1305.[2]

None of the witnesses to the 1994 Will had previously met Decedent. Only one of the witnesses testified in the Chancery proceedings, and that witness indicated that, while she saw Decedent sign the will, Decedent did not speak to anyone during the will signing. Apparently, a physician was present during the signing of the will but neither acted as a witness nor testified in the Chancery proceeding concerning Decedent's testamentary capacity. No witness testified that Decedent knew that she was signing a will, *i.e.*, that she acknowledged the document to be her will, and the Master made no finding to that effect. The will was executed on a Sunday, during a weekend when Joseph Melson was

---

1. The lawyer who drafted this will was later disbarred. John testified that as a result he had some question concerning its validity. In any event, he claimed that he and his mother were wary of dealing with lawyers and this concern, in part, led him to assume responsibility for drafting his mother's will.

2. While compliance with the self-proving provisions of 12 *Del.C.* § 1305 may eliminate certain mechanical steps required to "prove" the will, a self-proved will is nonetheless subject to the traditional challenges permitted under Delaware law. *Estate of Nelson*, Del.Ch., 447 A.2d 438, 445 (1982).

out of town, and he learned of the execution of the new will only after his mother's death.

## III

As the Chancellor noted, while the circumstances attendant upon the execution of the 1994 Will, particularly John's role in guiding his mother's wishes and drafting the document, raise suspicions, a challenger to the will must overcome significant presumptions to invalidate the will. Joseph argues that given the present somewhat unsettled state of the law in this jurisdiction, this Court should align itself with those jurisdictions that preclude the usual presumptions of testamentary capacity and lack of undue influence when the drafter of the will benefits materially from it.

▇▇▇▇ The structure of burdens and presumptions in will contest cases, while not fully defined under Delaware law, reflect certain basic precepts. The initial principle is that duly-executed wills are presumptively valid. "Under Delaware law, all ... will-contest matters start with the presumption that a testator had the capacity to make a will at the time it was made." *Matter of Langmeier*, Del.Ch., 466 A.2d 386, 389 (1983). Thus, it is the party attacking testamentary capacity who bears the burden of establishing that the decedent was legally incapable of executing a valid will. *Id.; In re West*, Del. Supr., 522 A.2d 1256, 1263 (1987). Likewise, the challenger carries the burden of proving that the will was a product of undue influence. *In re Norton*, Del.Supr., 672 A.2d 53, 55 (1996).

No decision of this Court has directly addressed whether and, to what extent, these burdens shift where, as here, the evidence shows that the drafter of the will is also one of its main beneficiaries. Earlier lower court opinions suggest that, under such circumstances, the will's proponent bears some higher obligation to prove testamentary capacity and lack of undue influence.

"If the will be written by a person who is benefited by it, or by a person standing in the relation of counsel or attorney, and who is also benefited by it, these are circumstances to excite a stricter scrutiny and require stricter proof of volition and capacity."

*In re Sharpley's Will*, Del.Super., 120 A. 586, 590 (1923) (quoting *Duffield v. Robeson*, Del.Super., 2 Harr. 375 (1837)).

These precedents do not articulate precisely the evidentiary result when an opponent proves that a beneficiary was involved in the drafting of the will—does the proponent bear the burden of persuasion, or, by contrast, simply that of going forward with evidence of capacity? The early cases do imply that the proponent no longer enjoys the full benefit of the usual presumption of testamentary capacity. At a minimum, these cases subject the conduct of the drafter/beneficiary to "stricter scrutiny" in the face of a challenge to the will.

Cases from other jurisdictions addressing this question offer some guidance. *See generally* R.W. Gascoyne, Annotation, *Presumption or Inference of Undue Influence from Testamentary Gift to Relative, Friend, or Associate of Person Preparing Will or Procuring its Execution*, 13 A.L.R.3d 381 (1967). The majority rule seems to be that, where the evidence establishes that the drafter of a will materially benefited from it, the presumptions of capacity and want of undue influence are dissipated. *See e.g., Looney v. Estate of Wade*, 310 Ark. 708, 839 S.W.2d 531 (1992); *Estate of Reiland*, 292 Minn. 460, 194 N.W.2d 289 (1972); *Estate of Seegers*, Okl. App., 733 P.2d 418 (1986); *but see Anderson v. Meadowcroft*, 339 Md. 218, 661 A.2d 726 (1995) (no presumption of fraud or undue influence when drafter receives gift under will). Some states permit burden-shifting only where the opponent proves a confidential relationship in addition to activity in preparing the will. *See, e.g., Rhoades v. Chambers*, Mo.App., 759 S.W.2d 398 (1988); *Estate of Baker*, 131 Cal.App.3d 471, 182 Cal.Rptr. 550 (1982). An apparent minority of states reject the notion that proof that a drafter takes under a will triggers burden-shifting. *See e.g., Estate of Alexander*, 12 Kan.App.2d 516, 749 P.2d 1052 (1988). In short, there is considerable authority, albeit something short of consensus, supporting a shifting of the relevant burdens where the will in question conveys a gift to its drafter.

Even among courts that permit burden-shifting, however, there is disagreement regarding the exact nature of the shift—does the proponent bear only the burden of producing evidence of capacity, or, on the other hand, must the proponent actually persuade the trier of fact of the will's validity? Answering this question is problematic in part because many courts do not carry the analysis to its conclusion.

Any attempt to evaluate the effect, upon the [issues of capacity and] undue influence, of a showing that a will gave a substantial gift to a close relative or associate of the person who drafted it or procured its execution is complicated by the failure of the courts to clearly elucidate the sense in which they have used such terms as "presumption," "inference," "burden of proof," and the like.

Gascoyne, 13 A.L.R.3d at 383 (footnote omitted). A few states explicitly hold that only the burden of production falls on the proponent. *See e.g., Hiler v. Cude*, 248 Ark. 1065, 455 S.W.2d 891, 900 (1970) (ultimate risk of nonpersuasion never shifts from contestant). Most courts that have confronted the question, however, transfer the full burden of persuasion to the will's proponent, some even imposing on the drafter a burden of proving the will's validity by clear and convincing evidence. *See, e.g., Berkowitz v. Berkowitz*, 147 Conn. 474, 162 A.2d 709, 710 (1960) (beneficiary must prove validity by "clear" preponderance of evidence); *Clarkson v. Whitaker*, Ind.App., 657 N.E.2d 139, 144 (1995) (drafter must rebut presumption of invalidity by "clear and unequivocal" proof); *Birch v. Coleman*, 15 Ark.App. 215, 691 S.W.2d 875, 878 (1985) (will is prima facie void absent "clear preponderance of evidence" of capacity); *Rizzo v. Rizzo*, 3 Ill.2d 291, 120 N.E.2d 546, 553 (1954) (must provide "clear and convincing evidence" to rebut presumption of invalidity).

As noted above, previous decisions of this Court have indulged the relevant presumption of testamentary capacity and have continued to place upon the challenger the burden of proving lack of testamentary capacity, albeit under heightened scrutiny. Most recently, we have defined the elements required to establish undue influence as: "(1) a susceptible testator; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and (5) a result demonstrating its effect." *In re Norton*, 672 A.2d at 55 (citing *In re West*, 522 A.2d at 1264). In *Norton*, we also approved continuing to place the burden of proving undue influence on the challenger to the will.

▆ In both *West* and *Norton*, however, the drafter of the challenged wills was an attorney who enjoyed no special relationship with the testatrix beyond that of attorney-client. Moreover, as we cautioned in *Norton*, an attorney drafting a will should, where circumstances permit, make a preliminary determination of competency through personal contact with the testatrix before the drafting process. *Compare In re Waters*, Del.Supr., 647 A.2d 1091 (1994). Most important, where an attorney acts as the drafter of the will, the attorney is ethically forbidden from sharing under it. *See* Prof.Cond.R. 1.8(c) ("A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer ... any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."). We are thus satisfied that, where the drafter of the will is a lawyer acting in a lawyer-client relationship, sufficient safeguards exist to permit the application of the usual presumptions and burden of proof.

We confront here, however, a situation that lacks implicit ethical safeguards and presents a paradigm for placing the burden of persuasion on the drafter/beneficiary. The will was drafted by a person without legal training under no ethical constraints concerning the limitation on his conduct. There is no testimony in the record, except that of the drafter/beneficiary, that the testatrix knew what the will contained and its effect on her prior will. The will was executed before witnesses who had never previously met the testatrix, and, by design or otherwise, was signed at a time when Joseph was not present. It should also be noted that the will was signed as part of a "package" of documents in a hospital setting by a testatrix who never recovered from the illness that

placed her in the hospital. Finally, as reflected in their respective rulings, the Chancellor and, to a lesser extent, the Master viewed the circumstances of the drafting and execution of Decedent's will as suspicious but considered the evidence under the relevant presumptions and burdens which confront the challenger.

In the light of the uncertainty of previous Delaware law, we are of the view that the usual presumption of testamentary capacity and the burden of proof on claims of undue influence should be clarified. Accordingly, consonant with the apparent majority rule, we hold that the presumption of testamentary capacity does not apply and the burden on claims of undue influence shifts to the proponent where the challenger of the will is able to establish, by clear and convincing evidence, the following elements: (a) the will was executed by "a testatrix or testator who was of weakened intellect"; (b) the will was drafted by a person in a confidential relationship with the testatrix; and (c) the drafter received a substantial benefit under the will. *Estate of Reichel*, 484 Pa. 610, 400 A.2d 1268 (1979). If that showing is made, the burden shifts to the proponent of the will to prove by a preponderance of the evidence that the testator or testatrix possessed the requisite testamentary capacity and to show the absence of undue influence.

With respect to claims of undue influence, we recognize that shifting the burden of proof in such cases may, to an extent, require proof negative. Nonetheless, where the challenger is able to demonstrate the same three elements that preclude the presumption of testamentary capacity, the burden shifts to the proponent of the will to prove affirmatively the absence of undue influence. Once the burden has shifted, the proponent must prove that he or she exerted no influence adverse to the interests of the testator or testatrix and that the disposition in dispute was consistent with the latter's intentions.

The ruling we announce today will apply in only a limited number of cases. The presumptions that attend the review of wills are intended to protect the expressed intentions of the testator or testatrix, whose capacity and state of mind is necessarily viewed *post hoc*. These traditional presumptions should not be disturbed except in the rare cases where, as here, the drafter/beneficiary should be required to dispel significant doubts that arise from the execution of a will by a susceptible testator or testatrix.

To the extent that our holding today is inconsistent with previous Delaware decisions, in particular our decision in *Ableman v. Katz*, Del.Supr., 481 A.2d 1114 (1984) (implying that the presumption of undue influence may not arise when beneficiary is instrumental in drafting of the will), those decisions are overruled.

Our ruling that John bears the burden of proof in establishing testamentary capacity and the absence of undue influence does not serve to invalidate the 1994 will. It does require that the Master, and the Court of Chancery, upon review *de novo*, evaluate the evidence from a different perspective. It may be that John will be able to discharge his burden of proof without benefit of the presumption, and we express no opinion in that regard. It is sufficient for present purposes to require that evidence be evaluated under the appropriate legal standard.

Joseph also appeals from the Court of Chancery's denial of counsel fees to an unsuccessful challenger of the will. Our reversal of the merits of the Court of Chancery's decision renders moot any dispute over counsel fees at this juncture.

Accordingly, we REVERSE the decision of the Court of Chancery and REMAND the matter for proceedings consistent with this opinion.

HARTNETT, Justice, concurring:

I agree with the majority that this matter must be reversed and remanded because the Court of Chancery incorrectly placed the burden of persuasion on the objector to the will, notwithstanding that the Testatrix's son drafted the will and was its principal beneficiary. I disagree, however, with the majority's imposition of certain evidentiary burdens on the objector.

As many cases state, if the objector to a will makes a showing that the will was drafted by a substantial beneficiary under the will, the burden of persuasion to show lack of undue influence shifts to the proponent of the will. Annotation: 13 A.L.R.3d 381 § 2 1997 Supplement; *Looney v. Estate of Wade,* 310 Ark. 708, 839 S.W.2d 531 (1992); *Estate of Reiland,* 292 Minn. 460, 194 N.W.2d 289 (1972), both cited by the majority; and *Swenson v. Wintercorn,* 92 Ill.App.2d 88, 234 N.E.2d 91 (1968).

I believe this rule is the majority rule and it is persuasive. In my opinion, this Court should follow it without imposing any additional evidentiary burdens on the objector.

BERGER, Justice, dissenting.

I share the majority's general concern that a person in a confidential relationship with a susceptible testator may abuse that trust. In this case, however, there is no evidence that Viola was a person of diminished or "weakened" intellect. Thus, even under the majority's formulation, there is no basis on which to shift the burden of proof. My broader concern is that a will proponent saddled with the burden of proving the absence of undue influence will rarely be able to satisfy that burden. I think a better approach would be to retain the presumptive validity of the will, but allow the trial court more freedom to find undue influence based upon its evaluation of all of the evidence, including the circumstances surrounding the drafting of the will and the credibility of the witnesses.

The facts in this case do not warrant the *de novo* review called for by the majority. Viola entered the hospital on August 10, 1994 suffering from an eating disorder. She was having trouble swallowing properly and was concerned that she would choke on her food. As a result, she was not eating and was becoming weak. According to John, her condition was improving until she unexpectedly choked on August 28th and died on August 31, 1994.

John's mother asked him to prepare the 1994 will on Thursday, August 11th. On Friday, August 12th, John brought the will to his mother and reviewed it with her. She asked him to make some changes to specific bequests and he took the will home with him. On Saturday, August 13th, John left the revised will with his mother and suggested that she review it with her friend, Michael Jaremchuk. Viola executed the 1994 will on Sunday, August 14th. The Master found no evidence that Viola lacked testamentary capacity or that she was susceptible to undue influence. The Chancellor agreed, noting that neither Joseph nor any hospital personnel suggested that Viola's mental capacity was diminished. Given this lack of evidence of susceptibility, I see no reason to ask the trial court to review the record under a different standard.

I also question how a will proponent could satisfy his or her burden to establish the absence of undue influence. Is it enough for the proponent to testify credibly that he or she did not influence the testator? The majority recognizes the difficulty in proving a negative but implicitly suggests that it can be done. It would be helpful to the trial court if some guidance were provided.

Based upon the foregoing, I respectfully dissent.