**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DENISE JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2023-0860-LM |
| | ) | |
| LATONYA BETHEA, | ) | |
| | ) | |
| Respondent. | ) | |

## POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

Final Report:  February 27, 2024
Date Submitted:  November 16, 2023

1.    This final report makes post-trial findings of fact and reaches conclusions of law concerning Denise Jackson's ("Petitioner") contest of the will of her stepfather, William Bethea ("Decedent"), claiming that Decedent lacked testamentary capacity, or alternatively, that the will resulted from Latonya Bethea's ("Respondent") exertion of undue influence causing the Decedent to replace Petitioner as executor of his estate and name Respondent as the executor instead.

2.    Petitioner filed this action on August 22, 2023.[1] In her petition, she indicates she seeks to contest the will of William Clarence Bethea. The Petitioner was named the executor and was a beneficiary of the prior will, however in the will presented to the Register of Wills by Latonya Bethea, the Petitioner is no longer

---

[1] D.I. 1.

identified as the executor and is no longer a beneficiary.[2] Petitioner seeks to invalidate the 2022 Will, and have the 2009 Will probated, whereby she would serve as the executor of the Decedent's estate and have a one-third share in the residuary of the estate.

3.    The Court held a one-day trial on November 16, 2023.[3]

## FINDINGS OF FACT[4]

4.    The evidence presented at trial supports the following findings of fact:

a.  William Clarence Bethea (the "Decedent") and Phyllis Elizabeth Bethea became legally married in 1993.[5] They both owned homes before getting married, but then sold them to purchase a home together at 22 West Payne Lane in Camden, Delaware (the "House").[6]

b.  When Phyllis and the Decedent were married, Phyllis had two children from previous relationships: Denise Jackson ("Petitioner") and Dawne Boykin. The Decedent also had children from a previous relationship, Latonya

---

[2] D.I. 4 Exhibit A.

[3] D.I. 12.

[4] The transcript of the trial held in this matter is cited as "Tr. at __". The transcript has not been finalized and remains in draft form. Citations to the docket are referenced to the Docket Index number as "D.I._".

[5] Tr. 7:6-9.

[6] Tr. 37:11-18; the married couple purchased the home as Tenants by the Entirety ("TBE").

Bethea ("Respondent"), Chantel Denise Bethea, and a son, William Clarence Jr. ("Buzzy").[7]

    c. Phyllis executed a Will on January 7, 2009 ("Phyllis' 2009 Will").[8] The Decedent also executed a Will on January 7, 2009 ("Decedent's 2009 Will").[9]

    d. In Phyllis's 2009 Will, she bequeathed her residuary estate to the Decedent, and if he predeceased her, subsequently in equal shares to Dawne Smash-Boykin, the Petitioner Denise Jackson, and the Respondent Latonya Bethea.[10] Phyllis appointed the Decedent as her executor and Petitioner as the alternate executor.[11]

    e. In the Decedent's 2009 Will, he bequeathed his residuary estate to Phyllis and named Dawne Smash-Boykin, Petitioner, and Respondent as the remainder beneficiaries.[12] He appointed Phyllis as his executor in his 2009 Will and named the Petitioner as the alternate executor.[13] The Decedent's 2009 Will

---

[7] Tr. 26:3-13.

[8] D.I. 1 Exhibit C.

[9] *Id.*

[10] *Id.* at ¶4.

[11] *Id.* at ¶5.

[12] D.I. 1 Exhibit C at ¶3(a)-(b).

[13] *Id.* at ¶5.

specifically disinherited two of his children, William Bethea, Jr. and Shantell Bethea.[14]

      f.  The Decedent was diagnosed with dementia in or around 2011[15] and suffered a car accident in or around the same year.[16] The parties were not able to indicate exactly when, and by whom, the Decedent was first diagnosed with dementia but Dawne Boykin, Petitioner's sister, testified that his doctor's at Dover Air Force Base informed their mother that the Decedent was "starting to have dementia" in 2011[17].

      g.  Phyllis died on April 17, 2013.[18]

      h.  Wanting someone to live in the house with him, the Decedent's daughter, Chantel moved to Delaware from New York with the intention of moving in with the Decedent, on September 23, 2014, but died the next day.[19]

      i.  The Decedent's son, William Clarence Jr., died on October 31, 2014.[20]

---

[14] *Id.* at ¶2 and ¶7.

[15] Tr. 39:10-16.

[16] Tr. 13:3-11.

[17] Tr. 12:12-23.

[18] Tr. 11:14-21.

[19] Tr. 62:10-63:2.

[20] Tr. 61:31-62:7.

j. Sometime after the death of his two children, the Decedent called the Respondent, his sole remaining biological child, in 2015 requesting her to stay with him in Delaware and take care of him. So, in June of 2015, she moved from California to Delaware to take care of him.[21]

k. In 2017, after one of the Decedent's doctor's appointments, the Decedent's Neurologist notified the Respondent that the Decedent had dementia and made her the emergency point of contact for his care.[22] Respondent agreed that the Petitioner did previously make her aware of the Decedent's dementia diagnosis in 2011, but 2017 was when she first learned of it from a doctor.[23]

l. The Decedent executed a new Will on March 21, 2022 (the "2022 Will").[24]

m. Respondent was still living in Delaware with the Decedent at the House at the time the 2022 Will was executed.[25] The Respondent testified that the Decedent drove himself with the Respondent in his 2013 Chrysler 300 to execute

---

[21] Tr. 61:21 – 62:2; Tr. 14:19-21.
[22] Tr. 63:12-13.
[23] Tr. 63:21-64:5.
[24] D.I. 1 Exhibit D.
[25] Tr. 51:23 – 53:22.

the 2022 Will.[26]  The 2022 Will was signed at Dover Air Force Base's legal office and prepared by Lieutenant Colonel T. Adam Newson, a Staff Judge Advocate.[27]

n. The Decedent named the Respondent as his only child in his 2022 Will.[28]

o. The 2022 Will appoints Respondent as the Decedent's executor and nominates his niece, Tracy Lynette Jones, as alternate executor.[29]

p. The 2022 Will gives the executor complete discretion in deciding which properties are to be used for debts, taxes, and other obligations.[30] It also bequeaths all the Decedent's tangible personal property and real property to the Respondent.[31]

q. The 2022 Will bequeaths the Decedent's residuary estate to the Respondent, and subsequently to the Decedent's niece, Tracy Lynette Jones.[32]

r. The 2022 Will makes no mention of the Petitioner, or her sister, Dawne Boykin, who were named in the 2009 Will.[33]

---

[26] Tr. 61:6-9.

[27] Tr. 59:16-18; D.I. 1 Exhibit D.

[28] D.I. 1, Exhibit D (the "2022 Will").

[29] D.I. 1, Exhibit D (the "2022 Will").

[30] *Id.* at ¶2.1.

[31] *Id.* at ¶3.1-3.2.

[32] D.I. 1, Exhibit D (the "2022 Will").

[33] *See Id.*

6

s. On February 25, 2023, Respondent found the Decedent on the floor in the House and called 911. As a result, Decedent was hospitalized at Bay Health Kent Campus for a week and was transferred to Eden Hill,[34] where he was hospitalized until he died on June 10, 2023.[35]

## CONCLUSIONS OF LAW

5. The law presumes that a duly executed will is valid and that the testator had the testamentary capacity to execute it.[36] Therefore, the person challenging the validity of such a will has the burden of showing by a preponderance of the evidence that the testator either lacked the requisite testamentary capacity or was unduly influenced by another at the time the will was executed.[37]

a. **Lack of Capacity.** Petitioner failed to prove by a preponderance of the evidence that Decedent lacked capacity at the time the 2022 Will was created. Under Delaware law, "only a modest level of competence is required for an individual to possess the testamentary capacity to execute a will."[38] Decedent's will was executed, in person, by a competent attorney with the Office of the Staff Judge

---

[34] Tr. 48:16-21.

[35] Tr. 5:11-12.

[36] *In re Szewzcyk,* 2001 WL 456448, at *3 (Del.Ch. April 26, 2001).

[37] *In re Melson,* 711 A.2d 783, 786 (Del.1998) (citing *Matter of Langmeier,* 466 A.2d 386, 389 (Del.Ch.1983)); *In re Estate of West,* 522 A.2d 1256, 1263 (Del.1987).

[38] *In re Estate of West*, 522 A.2d 1256, 1263 (Del. Supr. 1987) (citations omitted).

Advocate for the United States Air Force. Although Petitioner provided insight into Decedent's medical state prior to and after the will was created, it falls short in showing that Decedent lacked the capacity to "be capable of exercising thought, reflection, and judgment,"[39] as required by Delaware law, ***at the time*** he executed the 2022 Will.

b. **Undue Influence.** Alternatively, the Petitioner argues that the Decedent was unduly influenced to effectuate the challenged transaction, the 2022 Will. The essential elements of undue influence are: (1) a susceptible testator; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and, (5) a result demonstrating its effect.[40] It is the Petitioner's burden to prove that the will was a product of undue influence.[41] The burden of proof is not met if the evidence supports two equally plausible explanations for a late change of beneficiary, one of which involves undue influence.[42]

c. Looking at the first element of a susceptible testator, this Court has found an individual susceptible to undue influence where he had "a debilitating

---

[39] *Matter of Langmeier*, 466 A.2d 386, 402 (Del. Ch. Ct. 1983).

[40] *In re Est. of W.,* 522 A.2d 1256, 1264 (Del. 1987) (citing *Nardo v. Nardo,* Del.Supr., 209 A.2d 905, 912–13 (1965); *Matter of Langmeier,* 466 A.2d at 403.).

[41] *In re Est. of Justison*, 2005 WL 217035, at *9 (Del. Ch. Jan. 24, 2005).

[42] *Id.*

mental condition[,] . . . diminished capacity to take care of basic daily tasks, and [a] need to rely on the help of family members."[43] Such is present here. Mr. Bethea, having been diagnosed with dementia, a debilitating mental condition, in 2011 began to insist on having a family member live with him after his wife passed away in 2013. Although Respondent testified that his dementia did not advance until the beginning of 2023, neither party disputes that he had dementia prior to the creation of the 2022 Will. Respondent also testified about an incident when the Decedent was no longer able to answer the home phone after he allowed a scammer to remote into his computer.[44] I do find that the Decedent was a susceptible testator.

      d. The element of whether the Respondent had the opportunity to exert influence is met here as the Respondent moved into the house with the Decedent in June of 2015 and remained with him until his death. The Respondent's presence in Decedent's house provided an opportunity to exert influence.

      e. Undue influence also requires a showing that the Respondent had a disposition to exert the influence for an improper purpose. The disposition factor "may be satisfied where the alleged influencer stood to benefit financially from such action under circumstances in which the alleged influencer's continued ability to

---

[43] *In re Boyd*, 2003 WL 21003272, at *6 (Del. Ch. Apr. 24, 2003).
[44] Tr. 65:5-15.

support [herself] was dependent on the challenged transaction."[45] Disposition does not require a finding of financial security or need. For example, in *In re Henry,* this Court found the alleged influencer disposed to unduly influence a will change where "she had been living in [the decedent]'s home since she was 11 years old and could have been forced to move" absent the contested change.[46] Here, the Respondent had been living with the Decedent since 2015 and had an interest in securing ownership for herself after leaving California to help the Decedent. Although Respondent offered testimony that she was not aware of the 2009 will until after the Decedent passed away,[47] Respondent was aware that the 2009 Will would give a share of the house where she resided to the Petitioner and the Petitioner's sister. I find that the element of whether Respondent had the disposition to exert the influence for an improper purpose is met.

f. Next, undue influence requires a showing that the Respondent actually exerted undue influence. To prove actual exertion, I do not need to find knowingly wrongful conduct, rather I must look at the totality of the circumstances and inquire whether "undue influence is the more probable and plausible explanation

---

[45] *Ray v. Williams*, 2020 WL 1542028, at *32 (internal quotation marks omitted).

[46] *In re Henry,* 2021 WL 5816818, at *5 (Del. Ch. Nov. 10, 2021).

[47] I did not find this testimony credible as it conflicted with testimony where she admitted to discussing the 2009 will with the Petitioner and a New Jersey attorney prior to the Decedent's death.

for the acts, and conversely, [whether] any alternative explanations are improbable and implausible."[48] This is where the Petitioner's claim fails. Petitioner has not established an actual exertion or that an alternative explanation is implausible. The change from the 2009 Will to the 2022 Will could be for any reason, and I am not inclined to speculate. The Decedent specifically disinherited two of his children in his 2009 Will so there is a precedent of removing people from the Will. In addition, Respondent credibly testified that the Decedent wanted to create a new will because she was there helping to take care of him.[49] For seven years, the Decedent and the Respondent lived together. She left California and moved to Delaware at his request. She helped around the house with cooking and cleaning. They traveled together to New York, New Jersey, and Maryland.

6.      Although it is clear the Respondent had the opportunity to exert influence, in *Conner v. Brown*[50], the court held that the mere opportunity to influence is insufficient:

> ... [T]he fact that the proponent of a will had an opportunity, at the date of its execution, to exercise undue influence, raises no presumption that he did so; nor *1265 does the mere existence of confidential relations between the testator and beneficiary; nor the alteration of an existing will arbitrarily and without reason; nor the mere fact that a testator disposes of his property unequally, or in

---

[48] *In re Boyd*, 2003 WL 21003272, at *7.

[49] Tr. 60-18-22.

[50] Del.Super., 3 A.2d 64 (1938).

11

a manner which may seem unreasonable; for a testator having capacity, and acting freely, may dispose of his property as he sees fit.[51]

7.    There is simply no evidence that Respondent actually exerted undue influence, causing the Decedent to change his will, rather than the possibility that Decedent decided to change his will on his own. Because the change from the 2009 Will to the 2022 Will could be for any reason, and there is no evidence that Respondent actually exerted undue influence, the claim for undue influence fails.

8.    For the reasons set forth above, I recommend judgment in favor of the Respondent and Petitioner's claims fail. This is a final report pursuant to Court of Chancery Rules 143 and 144.  Exceptions may be taken within eleven days of the date hereof.[52]


/s/ Loren Mitchell
Loren Mitchell

Magistrate in Chancery

---

[51] Id. at 71.

[52] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").