**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

August 6, 2025

Jason C. Powell, Esq.
Thomas J. Reichert, Esq.
Laurel A. LaLone, Esq.
The Powell Firm, LLC
1813 N. Franklin Street
Wilmington, Delaware 19899

David J. Ferry, Jr., Esq.
Thomas R. Riggs, Esq.
Ferry Joseph, P.A.
1521 Concord Pike, Suite 202
Wilmington, Delaware 19803

Stephen A. Spence, Esq.
Meluney Alleman & Spence, LLC
1143 Savannah Road, Suite 3-A
Lewes, Delaware 19958

RE:  *Charles B. Kelley, Jr. v. Procino-Wells & Woodland, LLC and Juli S. Decker*, C.A. No. 2021-0959-SEM

Dear Counsel:

I write regarding the plaintiff's exceptions to the post-trial Final Report. In that Final Report, the Magistrate declined to invalidate estate planning documents because the plaintiff failed to prove undue influence or lack of capacity. The plaintiff seeks to reverse these findings, and challenges the Magistrate's assignment of the burden of proof and denial of attorneys' fees. For the reasons below, the exceptions are overruled and the Final Report is affirmed.

## I.     BACKGROUND[1]

Plaintiff Charles B. Kelley, Jr. is the only surviving child of decedent Charles B. Kelley, who passed away on April 7, 2021 at age 88.  To avoid confusion, I will refer to the plaintiff as "Plaintiff" and the decedent as "Kelley."

Kelley had a long-standing revocable trust—established in 1993 and updated over the years—designating Plaintiff the primary beneficiary.[2]

In February 2020, Kelley was diagnosed with terminal congestive heart failure and kidney disease.  His medical records indicated episodes of confusion. Paula Kristian, a neighbor, intervened in Kelley's medical decisions, which prompted concerns from Plaintiff and others.

After Kelley's discharge from the hospital, Plaintiff moved into Kelley's Millsboro, Delaware home to provide full-time care.  Their relationship became complicated and volatile, culminating in a heated argument on Easter Sunday 2020. During this argument, Plaintiff berated Kelley and demanded $28,000 for caregiving

---

[1] This background is drawn from the December 27, 2024 Final Report and trial record.  *See* Final Post-trial Report (Dkt. 118) ("Final Report"); Mar. 3-6, 2024 Trial Trs. (Dkts. 103-06) ("Trial Tr.").

[2] Final Report 10-11.

services.[3] That was their final conversation. Kelley asked Plaintiff to leave his Millsboro home, and Plaintiff never returned.

Shortly after Plaintiff's departure, Kelley became convinced that Plaintiff had stolen from him, including his deceased wife's wedding ring and funds from his bank accounts. Kristian was seemingly the source of these beliefs. Although the wedding ring was later found, Kelley remained convinced of the theft.

In May 2020, Kelley contacted Leslie DiPietro, an estate planning attorney at defendant Procino-Wells & Woodland, LLC, to revise his estate plan. Kelley stated his desire to remove Plaintiff as a fiduciary and beneficiary of Kelley's estate, citing the falling out and alleged theft. DiPietro conducted a follow-up call with Kelley alone to confirm his wishes. The resulting estate planning documents, which substantially reduced Plaintiff's inheritance, were signed on July 16, 2020 (the "2020 Documents").[4]

Neighbors continued to express concerns about Kristian's behavior, noticing her secretive visits to Kelley and removal of furniture from his home. Some also noted Kelley's decline. Defendant Juli S. Decker—Kelley's longtime neighbor and

---

[3] *Id.* at 14; *see* Trial Tr. 662-64, 679-80.

[4] Final Report 11 (citing JX 4).

friend—even contacted Adult Protective Services with concerns about Kristian's influence over Kelley.

After Kristian moved away, Decker became more involved in Kelley's care and affairs starting around November 2020. Kelley sought to make changes to his estate plan once again. He authorized Decker to communicate with DiPietro on his behalf. Another set of revised estate planning documents were executed on March 1, 2021 by Zoom (the "2021 Documents"), with Kelley, Decker, and a caregiver for Kelley present.[5] The 2021 Documents further solidified Plaintiff's disinheritance. They benefited Decker (who received Kelley's home) as well as other individuals and charities.

Kelley died several weeks later on April 7, 2021.[6]

Plaintiff began this litigation on November 8, 2021, seeking to invalidate the 2021 Documents for lack of capacity and undue influence.[7] A January 2022 amended complaint expanded the factual allegations,[8] and a March 2023 second amended complaint added claims to invalidate the 2020 Documents.[9]

---

[5] *Id.* at 17-18 (citing JX 12).

[6] Trial Tr. 196.

[7] Dkt. 1. There was also a fraudulent transfer claim that was later waived. *See* Final Report 23.

[8] Dkt. 16.

[9] Dkt. 54.

Trial took place before Senior Magistrate Molina from March 4 to 6, 2024.[10] She issued the Final Report on December 27, 2024. Plaintiff filed exceptions to the Final Report on January 6, 2025, and filed his opening brief in support on February 12.[11] Defendants Procino-Wells and Decker filed an answering brief opposing the exceptions on March 12.[12] Plaintiff filed a reply brief in further support of his exceptions on March 31.[13]

On June 23, this case was reassigned to me for the limited purpose of resolving Plaintiff's exceptions.[14]

## II. ANALYSIS

This court reviews a final report on exceptions de novo.[15] As such, I must examine the record to assess the Magistrate's factual and legal conclusions.[16]

---

[10] *See* Dkt. 100.

[11] *See* Pl.'s Opening Br. in Supp. of Exceptions to the Magistrate's Final Post-trial Report (Dkt. 123) ("Pl.'s Opening Br.").

[12] Defs.' Joint Answering Br. on Exceptions (Dkt. 125).

[13] Pl.'s Reply Br. in Supp. of Exceptions to Senior Magistrate's Final Post-trial Report (Dkt. 127).

[14] Dkt. 129.

[15] *See DiGiacobbe v. Sestak*, 743 A.2d 180, 184 (Del. 1999).

[16] After reviewing the exceptions and record, including the trial testimony, I determined that I can appropriately conduct a de novo review without a hearing. *See Lynch v. City of Rehoboth Beach*, 2005 WL 2000774, at *1 n.3 (Del. Ch. Aug. 16, 2005) ("When the parties except to one or more of the Master's findings from the evidence in the case, the Court can

Plaintiff takes exception to the Final Report on six grounds, arguing that: (1) the 2020 and 2021 Documents were analyzed collectively instead of separately; (2) too little weight was given to Kristian's and Decker's influence: (3) too much weight was given to DiPietro's testimony; (4) the burden of proof was assigned to Plaintiff; (5) Plaintiff's request for fees was denied; and (6) a no contest clause was found triggered. None of these contentions provides grounds to overturn the well-reasoned Final Report.

### A. The 2020 and 2021 Documents

Plaintiff asserts that the Magistrate erred by analyzing the 2020 and 2021 Documents together instead of as independent sets.[17] But Plaintiff sought to restore his beneficiary status and invalidate Kelley's entire estate plan. To achieve that end, Plaintiff needed to prove that both sets of documents were invalid due to undue influence or lack of capacity.

The Magistrate made detailed factual findings about the circumstances surrounding the execution of both sets of documents.[18] The undue influence claim was analyzed in the context of each alleged influencer: Kristian for the 2020

---

read the record that is relevant to the exceptions raised and draw its own factual conclusions.").

[17] Pl.'s Opening Br. 31-32; *see* Final Report 26-44.

[18] *See* Final Report 10-22.

Documents, and Decker for the 2021 Documents.[19] These facts were then considered in the context of Plaintiff's claims. Given Plaintiffs' overarching challenge, the Magistrate's analysis of the 2020 and 2021 Documents together was logical and appropriate.

### B.    Undue Influence

Plaintiff next argues that the Magistrate erroneously held that the 2020 and 2021 Documents were not the product of undue influence.[20] To prove undue influence, a plaintiff must demonstrate five elements: "(1) a susceptible testator; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and (5) a result demonstrating its effect."[21] The Magistrate found that Plaintiff failed to prove the actual exertion of influence.[22]

First, regarding Kristian and the 2020 Documents, the Magistrate appropriately credited the testimony of DiPietro—Kelley's attorney.[23] DiPietro testified that she believed Kelley was competent and not unduly influenced when he

---

[19] *See id.* at 31-34.

[20] Pl.'s Opening Br. 32-38; *see* Final Report 31-32.

[21] *In re Will of Melson*, 711 A.2d 783, 786 (Del. 1998) (citation omitted); *see also McGee v. Est. of Hopkins*, 2022 WL 17492353, at *8 (Del. Ch. Nov. 22, 2022).

[22] Final Report 31-32.

[23] *See infra* note 32 and accompanying text.

signed the 2020 Documents. Plaintiff insists that Kristian had improper motives and played a role in fostering Kelley's beliefs about Plaintiff's alleged theft.[24] But the Magistrate found no "evidence proving actual assertion" of influence.[25] Instead, Kelley's decision to disinherit Plaintiff was more likely prompted by the Easter 2020 argument that preceded Kelley's decision to revise his estate plan.[26]

Second, concerning Decker and the 2021 Documents, the Magistrate again relied on DiPietro's testimony confirming Kelley's competence and lack of undue influence during execution along with Decker's testimony.[27] Although Decker became more involved in Kelley's affairs and benefited from the 2021 Documents, the Magistrate found no evidence that Decker compelled Kelley to change his will against his true wishes.[28] Kelley overhauled his estate plan in 2020 due to his strained relationship with Plaintiff. The later changes in 2021—albeit beneficial to Decker—were properly viewed in the context of Kelley's continued desire to disinherit his son and reward those providing him care and companionship.

---

[24] Pl.'s Opening Br. 33-34, 36.

[25] Final Report 32.

[26] *See id.* at 37.

[27] *Id.* at 33-34.

[28] *See id.* at 33 (citing Decker's testimony).

The Magistrate's decision is consistent with the legal presumption that testamentary documents reflect the testator's free will.[29] The burden was on Plaintiff to prove otherwise.[30] He failed to carry it.

### C. DiPietro's Testimony

Plaintiff contends that the Magistrate gave too much weight to the testimony of DiPietro in holding that undue influence was unproven.[31] As a disinterested and experienced estate planning attorney, however, DiPietro's assessments of Kelley's competency and freedom from undue influence should be given "[c]onsiderable weight."[32] Based on my review of the record, the Magistrate appropriately did so.

DiPietro took diligent steps to learn Kelley's true intentions. She spoke to Kelley alone to confirm his desire to remove Plaintiff as a fiduciary and beneficiary. DiPietro's involvement in drafting and executing the documents also makes her testimony highly probative.[33] Her belief that Kelley was competent and not unduly

---

[29] *See infra* note 35 and accompanying text.

[30] *See Jackson v. Bethea*, 2024 WL 799422, at *3 (Del. Ch. Feb. 27, 2024); *see infra* note 36 and accompanying text.

[31] Pl.'s Opening Br. 39-42.

[32] *In re Will of Cauffiel*, 2009 WL 5247495, at *9 (Del. Ch. Dec. 31, 2009); *see also In re Est. of Vietri*, 2022 WL 3925995, at *9 (Del. Ch. Aug. 31, 2022) (attributing "a great deal of weight" to the drafting attorney's testimony).

[33] *See* Final Report 33-34.

influenced when executing both the 2020 and 2021 Documents provides meaningful evidentiary support to the Magistrate's findings.

### D. The Burden of Proof

Before trial, Plaintiff filed a motion in limine to shift the burden of proof to the defendants.[34] "There is a presumption under Delaware law that testamentary documents are the product of the testator's free will and are not tainted by undue influence."[35] A plaintiff carries the burden to prove that "undue influence is the more probable and plausible explanation for the testator's acts, and conversely, that any alternative explanations are improbable and implausible."[36]

Plaintiff argued that a burden shift was called for under *In re Will of Melson*.[37] There, the court explained that the proponent of a will may be assigned the burden of proof if the party challenging the will demonstrates, by clear and convincing evidence: "(a) the will was executed by 'a testatrix or testator who was of weakened intellect'; (b) the will was drafted by a person in a confidential relationship with the testatrix; and (c) the drafter received a substantial benefit under the will."[38]

---

[34] Dkt. 86.

[35] *In re Will of Hurley*, 2014 WL 1088913, at *4 (Del. Ch. Mar. 20, 2014).

[36] *In re Est. of Henry*, 2021 WL 5816818, at *6 (Del. Ch. Nov. 10, 2021).

[37] *See* 711 A.2d at 788.

[38] *Id.*

The Magistrate addressed Plaintiff's motion in limine in the Final Report.[39] She correctly held that *Melson* was inapplicable because DiPietro, who drafted the estate documents, did not receive a substantial benefit.[40] Generally, "where the drafter of the will is a lawyer acting in a lawyer-client relationship, sufficient safeguards exist to permit the application of the usual presumptions and burden of proof."[41] Thus, "where the relevant confidential relationship is between an attorney and her client, and the attorney does not stand to benefit substantially from the execution of the documents she has been called upon to draft, the *Melson* standard will not apply."[42]

### E.    Attorneys' Fees

Plaintiff sought an award of attorneys' fees in connection with this litigation. He invoked precedent stating that a fee award to an unsuccessful plaintiff in a will contest may be appropriate where a prima facie case of invalidity and "exceptional circumstances" are present.[43] The Magistrate rejected this argument, properly

---

[39] *See* Final Report 24.

[40] *See id.* at 29-30; *see also id.* at 30 n.150.

[41] *Melson*, 711 A.2d at 787; *see also Cauffiel*, 2009 WL 5247495, at *9 (quoting *In re Est. of West,* 522 A.2d 1256, 1264 (Del. 1987)).

[42] *In re Est. of Seppi*, 2011 WL 4132374, at *12 (Del. Ch. Aug. 30, 2011).

[43] *See* Pl.'s Opening Br. 57-59 (citing *Ableman v. Katz*, 881 A.2d 1114 (Del. 1984) and *In re Kittila*, 2015 WL 3899572 (Del. Ch. June 24, 2015)).

concluding that neither a prima facie case of invalidity nor exceptional circumstances exist.

First, Plaintiff claims that he had probable cause to challenge the 2020 and 2021 Documents due to Kelley's weakened intellect, susceptibility to influence, and the involvement of third parties who benefited from the will's revision.[44]  But the exertion of undue influence was unproven.[45]  Plaintiff also failed to show a lack of testamentary capacity.  Despite concerns about Kelley's mental state and external influences raised by Plaintiff, the evidence shows that Kelley had independent reasons for his estate planning decisions.[46]  The fact that Kelley freely articulated his wishes to DiPietro further undermines Plaintiff's view.

Second, Plaintiff insists that he established exceptional circumstances.[47]  The Magistrate correctly found otherwise.[48]  Unlike the precedent Plaintiff relies on,[49] Kelley's termination of his relationship with Plaintiff was explained by the Easter

---

[44] *Id.* at 49-51.

[45] *See supra* Section I.B.

[46] *See* Final Report 36-37.

[47] Pl.'s Opening Br. 51-53.

[48] Final Report 39-40.

[49] *Kittila*, 2015 WL 3899572.

2020 fight, bequeaths were made to various individuals and organizations with ties

to Kelley, and the estate itself did not benefit from Plaintiff's suit.[50]

### F. The No Contest Clause

Finally, Plaintiff challenges the Magistrate's holding that his claims triggered

a no contest clause.[51]  Delaware enforces no contest or *in terrorem* clauses.[52]

Kelley bequeathed $10,000 to Plaintiff.[53]  The 2021 Document include a no

contest provision:

> If any person attempts to contest or oppose the validity of this
> trust or any amendment to this trust, or commences, continues,
> or prosecutes any legal proceedings to set this trust aside, then
> that person will forfeit his or her share, cease to have any right
> or interest in the trust property, and will be considered to have
> predeceased me for purposes of this instrument.[54]

The Magistrate accurately interpreted the plain language of this provision in holding

that Plaintiff forfeited his $10,000 bequest.[55]

---

[50] Final Report 39-40.

[51] Pl.'s Opening Br. 53.

[52] *See Mitchell v. Reynolds*, 2009 WL 132881, at *13 (Del. Ch. Jan. 6, 2009); 12 *Del. C.* § 3329(a).

[53] Final Report 18 (citing JX 12 § 6.01).

[54] *Id.* at 42 (quoting JX 12 § 11.03).

[55] *Id.* at 42-43.

## III.   CONCLUSION

After reviewing the record, I agree with the Magistrate's conclusions. Plaintiff's exceptions are overruled.  The Final Report is adopted as a decision of this court.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor