# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| KARRIE HEATHCOTE BALLANTINE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2022-0481-PWG |
| | ) | |
| KRISTEN H. LATHAM, | ) | |
| (Individually and in her official capacity | ) | |
| as Executrix of the Estate of Luther T. | ) | |
| Heathcote a/k/a L. Thomas Heathcote) | ) | |
| | ) | |
| Defendant. | ) | |

## MASTER'S REPORT

Date Submitted:   August 18, 2022
Final Report:     October 28, 2022

Plaintiff Karrie Heathcote Ballantine, Bay St. Louis, Mississippi, *Pro se*

Chad R. Lingenfelder, Esquire, THE SMITH FIRM, LLC, Seaford, Delaware,
*Attorney for Defendant Kristen H. Latham*

**GRIFFIN, M.**

Pending before me is a dispute in which one sister, Petitioner, alleges that another sister, Respondent, unduly influenced their father so that he changed his will and his power of attorney, disinheriting Petitioner and replacing her with Respondent as his agent. She also claims that, through Respondent's actions regarding their father's will and his finances, Respondent has breached her fiduciary duty, was unjustly enriched, and committed equitable fraud. Petitioner seeks an accounting, the imposition of a constructive trust and Respondent's removal as executrix of their now deceased father's estate. Respondent has moved for summary judgment on all claims. I recommend that the Court grant the motion for summary judgment and dismiss Petitioner's claims in their entirety. This is a final report.

## I. BACKGROUND

### A. Factual Background

On June 6, 2016, Luther T. Heathcote ("Decedent") executed a Power of Attorney ("2016 POA") in favor of his daughter, Karrie Heathcote Ballantine ("Ballantine").[1] Ballantine did not begin acting as Decedent's agent under the 2016 POA until March 2020.[2] On March 2, 2020, Decedent was found "barely responsively" in his home.[3] Decedent was hospitalized and then transferred to an

---

[1] Docket Items ("D.I.") 11, Mot. for Summ. J. [hereinafter "MSJ"], at 2; D.I. 14, at 1.

[2] MSJ, at 2; D.I. 14, at 1.

[3] D.I. 9, ¶ 11. Circumstances surrounding the cause of Decedent's hospitalization are disputed. In its Order Granting Objections to Accounting, the Court of Common Pleas, York County, Pennsylvania, Orphans' Court Division, found that Decedent fell and hit his

1

assisted living facility, Haven at Springwood ("HAS"), in Pennsylvania, on or about April 15, 2020.[4] Ballantine contends that, on or about July 29, 2020, while Decedent was at HAS, he asked a friend pick him up at the facility and take him home, but facility staff told the friend that Decedent was physically unable to leave the facility.[5] She alleges that HAS staff described Decedent's behavior as threatening around that time and questioned his competency.[6]

On or about September 1, 2020, Charles Calkins, Esq. ("Calkins") sent a letter to Ballantine advising that he had been engaged by Decedent "in reference to a situation which involves his bank accounts, credit cards, trust, etc., all of which are being retained by [Petitioner] while he is in a nursing facility."[7] His letter asked for an accounting of Decedent's monies being held by Ballantine.[8] On October 16,

---

head. D.I. 11, Answer [hereinafter "Answer"], Ex. B, at 4-5. Ballantine asserts that Decedent attempted to take his own life. D.I. 9, ¶ 12. She further asserts that he was placed on psychiatric commitment at the hospital but that a "305 hearing for a fifteen (15) day psychiatric involuntary hospitalization did not occur because of Covid-19 and the lack of hospital beds." *Id.*, ¶ 15. Latham denies those claims. Answer, ¶ 15.

[4] D.I. 9, ¶¶ 12, 17.

[5] *Id.*, ¶ 21.

[6] *Id.*, ¶¶22-28. Plaintiff alleges that, on July 30, 2020, "Dr. Glorioso stated [Decedent] had a history of undiagnosed psychopathic tendencies and a personality disorder," and that HAS staff advised that, when she asked them about Decedent's competency, "Dr. Glorioso said they would need to evaluate him." *Id.* ¶ 25. She also alleges that, around that time, HAS staff attempted to get Decedent to agree to move to an apartment in the facility at a higher cost, but he refused. *Id.*, ¶¶ 27, 28.

[7] D.I. 3.

[8] *Id.*

2020, Calkins wrote to Ballantine's attorney stating that he represents Decedent and that Ballantine has been removed as Decedent's agent effective immediately and should not expend Decedent's monies or schedule any examinations of Decedent.[9] Ballantine alleges that there were discussions with HAS about a competency examination for Decedent on or around October 16, 2020.[10]

On October 22, 2020, while at HAS, Decedent executed a Last Will and Testament ("Will") disinheriting Ballantine, and a new power of attorney ("2020 POA") appointing his other daughter, Kristen H. Latham ("Latham"), as his agent.[11] By affidavit, Calkins attested that he had known Decedent "for more than 25 years prior to his passing" and had spoken to Decedent "several times via telephone," and in person, concerning Decedent's desired revisions to his will and power of attorney.[12] He stated that Decedent was, at all times during that process, "of sound mind and body," coherent, and that he saw no evidence of "undue influence, pressure, or persuasion on behalf of … Latham" with regard to Decedent's actions in changing the Will and 2020 POA.[13]

---

[9] D.I. 4.

[10] D.I. 9, ¶ 31.

[11] D.I. 2; Answer, Ex. A.

[12] Answer, Ex. A, Calkins June 30, 2022 Aff. [hereinafter "Calkins Aff."].

[13] *Id.* The notary who notarized the Will on October 22, 2020 also attested, in a June 30, 2022 affidavit, that Decedent appeared competent and that she saw no evidence of undue influence, pressure or persuasion by Latham with regard to the Will or 2020 POA. Answer, Ex. A, Darlene Evelyn Dubs June 30, 2022 Aff. [hereinafter "Dubs Aff."].

On October 22, 2020, Decedent left HAS and Latham moved him into her residence in Milton, Delaware.[14] Ballantine alleges that she delivered Decedent's truck and handgun to the police station and the rest of his possessions to his attorney's office.[15] Decedent died on October 7, 2021.[16]

On January 31, 2022, the Court of Common Pleas of York County, Pennsylvania, Orphans' Court Division, ruled on objections to a June 25, 2021 accounting filed by Ballantine as Decedent's agent.[17] The Court of Common Pleas Order ("CCP Order") granted Decedent's and Latham's objections to Ballantine's accounting and found that Ballantine breached her fiduciary duties as Decedent's agent by treating his funds as her own, and ordered that Ballantine remit $176,994.42 to Decedent within 30 days of the date of the CCP Order.[18] That Court also found that Decedent "never intended to disinherit Ms. Latham."[19]

---

[14] D.I. 9, ¶ 35, 36; Answer, ¶ 36. It is undisputed that Ballantine called Delaware Adult Protective Services ("APS") to report Decedent's removal from HAS. D.I. 9, ¶ 39; Answer, ¶ 39. Latham alleges that there was no finding of concern by APS regarding Decedent's mental condition or physical state. Answer, ¶ 39.

[15] D.I. 9, ¶¶ 40, 41.

[16] *Id.*, ¶8.

[17] Answer, Ex. B. A hearing was held on the matter on September 03, 2021. *Id.*, at 1.

[18] *Id.*, at 1, 7. That Court found that Ballantine bought a $44,084.00 boat, titled in her and her husband's name, using Decedent's funds and otherwise transferred his funds to her account without his authorization. *Id.*, at 5-6, 8.

[19] *Id.*, at 5, 7-8. The CCP Order indicated that Ballantine had asserted that she acted, in part, because Decedent "did not want" Latham to inherit.

On April 6, 2022, the Sussex County Register of Wills admitted the Will to probate and granted testamentary letters to Latham.[20]

B. *Procedural History*

On June 3, 2022, Ballantine, acting *pro se*, filed a complaint against Latham, individually and in her official capacity as executrix of Decedent's estate ("Estate").[21] She claims that Latham's undue influence of Decedent invalidated the Will, Latham had breached her fiduciary duties, was unjustly enriched, and committed equitable fraud.[22] In addition to voiding the Will, Ballantine sought an accounting, creation of a constructive trust, removal of Latham as executrix of the Estate, and a preliminary injunction.[23] On June 9, 2022, she amended the complaint ("Amended Complaint") to eliminate the claim for a preliminary injunction.[24] On July 7, 2022, Latham filed an answer asking the Court to dismiss Ballantine's claims, allow Latham to finalize the Estate, and for attorneys' fees, costs and interest.[25] Also

---

[20] Sussex County Register of Wills ("ROW"), Folio No. 25826, D.I. 2; *id.*, D.I. 3. Because the ROW is a clerk of the Court of Chancery, filings with the ROW are subject to judicial notice. *See* 12 *Del. C.* § 2501; Del. R. Evid. 202(d)(1)(C); *Arot v. Lardani*, 2018 WL 5430297, at *1, n. 6 (Del. Ch. Oct. 29, 2018).

[21] D.I. 1.

[22] *Id.*

[23] *Id.*

[24] D.I. 8; D.I. 9.

[25] Answer. Latham requests legal interest from the date of the Complaint to its dismissal for her loss of access, as the sole beneficiary of the Estate, to Estate assets during that time. *Id.*, at 9.

on July 7, 2022, Latham filed a motion for summary judgment ("MSJ"), arguing that the Amended Complaint contains no factual assertions showing undue influence by Latham or breach of fiduciary duty by Latham as Decedent's agent or executrix; has not shown unjust enrichment or properly pled equitable fraud; and the remaining claims are not causes of action but remedies.[26] Ballantine responded on August 8, 2022 seeking denial of the MSJ,[27] and Latham replied on August 18, 2022.[28]

## II. STANDARD OF REVIEW

Under Court of Chancery Rule 56, the Court grants a motion for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[29] The moving party bears the burden of demonstrating that no material issues of fact are in dispute and that it is entitled to judgment as a matter of law.[30] Evidence must be viewed "in the light most favorable to the non-moving party."[31] "[O]nce

---

[26] MSJ.

[27] D.I. 14.

[28] D.I. 15.

[29] Ct. Ch. R. 56(c); *see also USA House Sols., Inc. v. Zaborowski*, 2018 WL 618594, at *1 (Del. Ch. Jan. 24, 2018) (ORDER) (citations omitted).

[30] *Wagamon v. Dolan*, 2012 WL 1388847, at *2 (Del. Ch. Apr. 20, 2012).

[31] *Williams v. Geier*, 671 A.2d 1368, 1388-89 (Del. 1996) (citing *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 99 (Del. 1992)).

the moving party has satisfied its initial burden of demonstrating the absence of a material factual dispute, the burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial."[32] "To withstand a motion for summary judgment, the non-moving party must demonstrate, based upon submitted evidence, 'a triable issue of material fact.'"[33] Mere allegations or denials in a pleading, unless backed up by specific facts contained in admissible evidence, are insufficient to show that there is a genuine issue for trial.[34]

---

[32] *In re Transkaryotic Therapies, Inc.*, 954 A.2d 346, 356 (Del. Ch. 2008) (internal quotation marks and citations omitted); *see also* Ct. Ch. R. 56(e); *In re John Q. Hammons Hotels Inc. S'holder Litig.*, 2009 WL 3165613, at *9 (Del. Ch. Oct. 2, 2009) ("[S]ummary judgment is appropriate where [the non-moving] party fails to make a sufficient showing on any essential element of its case.").

[33] *Frank v. Elgamal*, 2014 WL 957550, at *17 (Del. Ch. Mar. 10, 2014) (quoting *In re Gaylord Container Corp. S'holders Litig.*, 753 A.2d 462, 473 (Del. Ch. 2000)); *see also Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009) ("It is not enough that the nonmoving party put forward a mere scintilla of evidence; there must be enough evidence that a rational finder of fact could find some material fact that would favor the nonmoving party in a determinative way, drawing all inferences in favor of the nonmoving party.").

[34] *See, e.g.*, *Feinberg v. Makhson*, 407 A.2d 201, 203 (Del. 1979) ("It is settled law in Delaware that where a moving party's affidavits in support of a Rule 56 motion negate the opposing party's pleadings, the opposing party must submit countervailing evidence or affidavits or judgment may be granted."); *Wagamon*, 2012 WL 1388847, at *2; *Geier v. Meade*, 2004 WL 243033, at *8 (Del. Ch. Jan. 30, 2004); *Wells Fargo Bank, N.A. v. Williford*, 2011 WL 5822630, at *2 (Del. Super. Nov. 17, 2011).

## III.   ANALYSIS

### A. The Evidence does not Show that the Will was a Product of Undue Influence.

Ballantine seeks to void the Will because it "was procured through duress, undue influence, and fraud."[35]   She asserts that Decedent was a susceptible testator, Latham had the opportunity to exert undue influence on Decedent and, as a result of Latham's undue influence, Decedent executed the Will leaving Latham as his sole beneficiary.[36]   Latham responds that Ballantine's allegations of undue influence by Latham are unsupported by facts, and Ballantine has not shown that her actions as Decedent's agent were not the reason he disinherited her.[37]

Ballantine challenges the validity of the Will by claiming it was a product of undue influence.   "A duly-executed will is presumptively valid and free of undue

---

[35] D.I. 9, ¶46.  Although Ballantine argues that Decedent's mental capacity was "notably in question" in her response to the Motion, she makes no claim in the Amended Complaint regarding Decedent's testamentary capacity.  However, I note that there is no evidence showing that Decedent did not have testamentary capacity at the time he executed the Will. "Delaware law presumes that the [testator] had sufficient testamentary capacity when executing [his] will, and the party attacking testamentary capacity bears the burden of proof." [35] *In re West*, 522 A.2d 1256, 1263 (Del. 1987) (citing *In re Langmeier*, 466 A.2d 386, 389 (Del. Ch. 1983). The standard for testamentary capacity "is that one who makes a will must, at the time of execution, be capable of exercising thought, reflection and judgment, and must know what he or she is doing and how he or she is disposing of his or her property." *Id.* Despite the allegations about Decedent's mental health and behavioral issues in the Amended Complaint, the affidavits of the attorney who prepared the Will and the notary when he signed the Will, demonstrate that Decedent knew what he was doing in disposing of his property through the Will. *See supra* notes 6, 12-13 and accompanying text.

[36] D.I. 9, ¶¶ 47-49.

[37] MSJ, at 6-7.

influence."[38]  Under Delaware law, the challenger to a will "carries the burden of proving that the will was a product of undue influence."[39]  "To be considered undue, the amount of influence exerted over the testator's mind 'must be such as to subjugate his mind to the will of another, to overcome his free agency and independent volition, and to impel him to make a will that speaks the mind of another and not his own.'"[40]  The "essential elements of undue influence are: (1) a susceptible testator; (2) the opportunity to exert influence; (3) a disposition to do so for an improper purpose; (4) the actual exertion of such influence; and, (5) a result demonstrating its effect."[41]  The elements must be proven by a preponderance of

---

[38] *In re Hammond*, 2012 WL 3877799, at *3 (Del. Ch. Aug. 30, 2012).

[39] *In re Justison*, 2005 WL 217035, at *6; *see also In re Will of Cauffiel*, 2009 WL 5247495, at *7 (Del. Ch. Dec. 31, 2009).

[40] *In re Will of Cauffiel*, 2009 WL 5247495, at *7 (quoting *In re Langmeier*, 466 A.2d 386, 403 (Del. Ch. 1983).

[41] *In re West,* 522 A.2d 1256, 1264 (Del. 1987). *See In re Will of Cauffiel*, 2009 WL 5247495, at *7; *In re Gardner*, 2012 WL 5287948, at *11 (Del. Ch. Oct. 24, 2012).

evidence.[42]  If any one of the elements is not proven, then the challenger to a will has not met their burden of proving undue influence.[43]

To grant summary judgment on the undue influence claim, I must find that no material issues of fact exist regarding Ballantine's undue influence allegations and that Latham is entitled to judgment as a matter of law.  "A testator must be susceptible to influence as a prerequisite to a finding of undue influence."[44]  "Evidence of a subject's dependence on another, or a particular predisposition to accede to the demands of another person, may be sufficient to show susceptibility."[45]  "The Court has previously determined an individual to be susceptible where he suffered 'diminished capacity to take care of basic daily tasks' and 'needed to rely on the help of family members and [the alleged influencer].'"[46]

---

[42] *In re West*, 522 A.2d at 1264.  Burden-shifting under *In re Melson* was not argued in this case. *In re Melson*, 711 A.2d 783, 788 (Del. 1998) ("[The] presumption of testamentary capacity does not apply and the burden on claims of undue influence shifts to the proponent where the challenger of the will is able to establish, by clear and convincing evidence, the following elements: (a) the will was executed by "a testatrix or testator who was of weakened intellect"; (b) the will was drafted by a person in a confidential relationship with the testatrix; and (c) the drafter received a substantial benefit under the will.")(citations omitted).  Since the Will was prepared by an attorney who was not in a confidential relationship with Decedent and did not receive a benefit under the Will, the considerations in *Melson* do not apply here.

[43] *In re West*, 522 A.2d at 1264.

[44] *In re Est. of Stevens*, 2011 WL 6916537, at *2 (Del. Ch. Dec. 29, 2011).

[45] *Ray v. Williams*, 2020 WL 1542028, at *31 (Del. Ch. Mar. 31, 2020).

[46] *Id.*, at *32 (citations omitted).

Taking all pled facts in the Amended Complaint as true, I consider that Decedent had mental health and behavioral issues around the time that he executed the Will. However, his actions during that time belie his dependence on another or that he had a predisposition to comply with another's demands. If he had such a predisposition, it would be reasonable that he would rely on Ballantine, who was his agent, lived close by and was involved in making decisions about his care and his finances.[47] Instead, the evidence shows that, on or about September 1, 2020, Decedent engaged Calkins, an attorney he had known for close to 25 years, to represent him related to his concerns about Ballantine's handling of his finances and to implement changes to his testamentary plans.[48] There are no factual allegations in the Amended Complaint indicating that Decedent was dependent upon Latham at the time.[49] Calkins attested, in an affidavit, that Decedent was of sound mind and body, coherent, and aware of the factual events that gave rise to Decedent's desire to change his will at all times when he interacted with him.[50]

Despite Ballantine's allegations of Decedent's mental health issues around the time the Will was executed, the evidence shows that Decedent discussed his testamentary plans to disinherit Ballantine repeatedly with Calkins, his independent

---

[47] D.I. 9.

[48] D.I. 3; Calkins Aff. ¶¶ 3-5.

[49] D.I. 9.

[50] Calkins Aff., ¶¶ 9, 12.

counsel, and was specific in communicating his wishes on several occasions prior to, and at the time of, executing the Will.[51] Even drawing all inferences in Ballantine's favor, I find Decedent's actions do not depict a person susceptible of influence.

Assuming arguendo that the Decedent was a susceptible testator, the record contains no factual basis to support the remaining elements of undue influence. The pled facts do not show that Latham had the opportunity to exert influence over Decedent. Evidence should show that influencer "was able to isolate [the testator], or that circumstances otherwise presented themselves sufficient to allow the [influencer] to overbear [the testator's] own will."[52] Here, Decedent was residing at HAS and, unlike Ballantine, Latham did not live close to Decedent, and there is no evidence that Decedent and Latham saw or communicated with each other regularly.[53] In addition, the evidence does not show that Latham had the disposition to exert influence over Decedent for an improper purpose.[54]

---

[51] *Id.*, ¶¶ 6, 10.

[52] *In re Est. of Hammond*, 2012 WL 387779, at *4 (Del. Ch. Aug. 30, 2012).

[53] *See* D.I. 9, ¶¶ 4, 5 (showing that Ballantine lived in York, Pennsylvania, at that time, and Latham lived in Milton, Delaware); D.I. 11, Ex. B, at 5 (CCP Order stating that "[a]gent lives locally and Ms. Latham resides in Delaware"); D.I. 14, at 4 (Decedent "had a minimal relationship with" Latham).

[54] Ballantine includes various allegations about Latham's "financial distress and history of manipulative behavior," including a reference to a pending Court of Chancery case in which Latham is involved and assertions about Medicaid fraud committed by Latham, in her response to the MSJ. D.I. 14, ¶¶ 5, 6. Those allegations are not included in the Amended Complaint or other document that would be properly considered in this analysis

12

Nor does the record show the actual exertion of influence over Decedent by Latham. Calkins had several telephonic discussions and a face-to-face discussion with Decedent in which Decedent expressly repeated "his desire and intention to revise his Last Will and Testament providing all of his assets to … Latham and to specifically disinherit … Ballantine due to improprieties with … Ballantine regarding her handling of him as his appointed Agent."[55] Calkins attested that Decedent contacted him to schedule the signing of the Will and that there was no evidence of undue influence by Latham, or that the Will was not Decedent's "free and voluntary act."[56] Similarly, the notary attested that she saw no evidence of undue influence, pressure, or persuasion by Latham, and Decedent stated his intention to disinherit Ballantine and acted in signing the Will of his own volition.[57]

As discussed above, Decedent clearly and repeatedly expressed his testamentary wishes to his counsel, which were reflected in the Will – he disinherited Ballantine because of her actions as his agent and devised his entire estate to Latham. And, although Latham benefitted by inheriting the Estate, the facts do not show that the Will was executed as a result of her undue influence. Even considering the

---

but, regardless, do not show that Latham was disposed to influence Decedent for an improper purpose.

[55] Calkins Aff., ¶¶ 6, 11.

[56] *Id.*, ¶¶ 8, 14-15.

[57] Dubs Aff., ¶¶5, 8-9.

13

evidence in Ballantine's favor, I find that Latham has shown sufficient evidence to support summary judgment, and Ballantine has failed to come forward with specific evidence to show there is a genuine issue for trial. I recommend that the Court dismiss Ballantine's claim that the Will was a product of Latham's undue influence, and find that the Will is valid.

### B. The Evidence Does Not Show that Latham Breached her Fiduciary Duties.

Ballantine claims that a fiduciary duty existed between Decedent and Latham because he "reposted [sic] trust and confidence to exercise ordinary care, fairness, and honesty in [Latham's] dealings with him," and that Latham breached that duty when she exercised undue influence and self-dealing to obtain Decedent's assets when he was in a weakened state, causing injury to Decedent and his estate.[58] Latham responds that there are no factual allegations that she, as executrix or his agent under the 2020 POA, has misappropriated funds or failed to account for the Estate's assets properly.[59]

"Generally, [a] fiduciary relationship is a situation where one person reposes special trust in another or where a special duty exists on the part of one person to

---

[58] D.I. 9, ¶¶ 51-54.

[59] MSJ, at 8.

protect the interests of another."[60] Executors and agents are fiduciaries.[61] Latham became Decedent's agent on October 22, 2020.[62] And, there are instances where "a relationship predicated on particular confidence or reliance may give rise to fiduciary obligations." [63] In considering whether such a relationship exists, courts typically look at whether "circumstances make it certain the parties do not deal on equal terms but on one side there is an overmastering influence or on the other weakness, dependence or trust, justifiably reposed."[64] There is no evidence showing that, on or about October 22, 2020, Latham had an overmastering influence over Decedent, or that he relied on her for support because of his weakness. Therefore, until she became Decedent's agent on October 22, 2020, Latham owed no fiduciary duties to Decedent. Decedent executed the Will bequeathing his estate to Latham at the same time he executed the 2020 POA appointing her his agent.[65] So, there is no

---

[60] *Mitchell v. Reynolds*, 2009 WL 132881, at *9 (Del. Ch. Jan. 6, 2009) (citation omitted).

[61] *Id.*

[62] *See supra* note 11 and accompanying text.

[63] *Mitchell*, 2009 WL 132881, at *9.

[64] *Ray v. Williams*, 2020 WL 1542028, at *29 (Del. Ch. Mar. 31, 2020) (internal quotation marks and citations omitted); *see also Mitchell*, 2009 WL 132881, at *9 ("This Court has frequently looked to the transferor's extensive or exclusive reliance on another for physical, emotional, or decisional support, a query informed by the transferor's disposition and mental and physical capabilities, as well the existence and extent of any additional support network.").

[65] *See* Calkins Aff., ¶¶ 3-4, 10-13. Moreover, I find no evidence that Latham unduly influenced Decedent related to the Will and, for similar reasons, conclude that there is no evidence the 2020 POA was a product of undue influence. *See id.*, ¶¶ 4, 13-14, 16.

evidence that Latham owed Decedent a fiduciary duty related to the execution of the Will.

And, the evidence does not show that Latham exercised undue influence or self-dealing "to obtain all of [Decedent's] assets," and no factual allegations that she misused Decedent's funds while acting as his agent under the 2020 POA.[66] So, there is no basis in the record to show that Latham breached a fiduciary duty to Decedent as his agent, and I recommend that the Court dismiss Ballantine's claim that Latham breached a fiduciary duty to Decedent.

## C. There is no Evidence that Latham was Unjustly Enriched.

Ballantine also claims that Latham was unjustly enriched by using fraud, undue influence, or other unconscionable conduct to have the Will changed in her

---

[66] D.I. 9, ¶ 52. Although it is not clear that Ballantine is asserting that Latham breached her fiduciary duty as executor, I consider that claim and conclude there is no evidence that Latham acted inappropriately breaching her fiduciary duties as executor. The Amended Complaint contains no pled facts concerning Latham's actions as executrix. *See* D.I. 9. Further, since I find that the Will is valid, and Ballantine is not a beneficiary under the Will, *see* D.I. 2, she has no standing to claim that Latham breached her fiduciary duty as executrix. *See Dewey v. Arce*, 2020 WL 1698594, at *3 (Del. Ch. Apr. 8, 2020), *report and recommendation adopted,* (Del. Ch. 2020) ("A person lacks standing to contest a will if they have no interest in the estate which may be affected by the probate of the proposed will; and the interest must be pecuniary and one detrimentally affected by the will, and not a mere sentimental interest.") (internal quotation marks and citations omitted); *Tunnell v. Stockley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006) ("[O]nly the beneficiaries of [a] will could complain that [the executrix] breached her fiduciary duties in the handling of [the] estate.").

favor.[67]    Latham points to the CCP Order where the Court found that Ballantine misappropriated Decedent's funds while she served as his agent to show that Decedent had "extreme justification" for changing his Will.[68]

Unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."[69]  In this case, there is no evidence of undue influence, fraud or unconscionable conduct related to Decedent's execution of the Will.[70]  The Will is valid.  "The role of a court in interpreting a will is to give the fullest effect possible to the wishes of the testator."[71]  The Will is plain and unambiguous on its face – it provides that Latham inherits all of Decedent's assets and Ballantine is disinherited.  "Since, therefore, the testator's intent to exclude the plaintiff from any share of his estate is absolutely clear, the courts under such

---

[67] D.I. 9, ¶ 57.

[68] MSJ, at 10.

[69] *In re Tr. FBO duPont Under Tr. Agreement Dated Aug. 4, 1936*, 2018 WL 4610766, at *13 n. 97 (Del. Ch. Sept. 25, 2018) (citation omitted).  *Schaeffer v. Lockwood*, 2021 WL 5579050, at *20 (Del. Ch. Nov. 30, 2021), *judgment entered* (Del. Ch. 2022) ("To prevail on [an] unjust enrichment claim, [plaintiffs] must prove the following elements by a preponderance of the evidence: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.").

[70] *See* Section IIIA *supra* (finding no evidence that Decedent was unduly influenced to execute the Will or the 2020 POA); Section IIID *infra* (finding no evidence to support Ballantine's fraud claim).  In addition, there is no evidence alleged in the Amended Complaint to support a claim of unconscionable conduct by Ballantine. *See* D.I. 9.

[71] *In Matter of Beaty*, 1996 WL 560183, at *8 (Del. Ch. Sept. 30, 1996).

circumstances have no alternative but to enforce and carry out that intent."[72]  There is no unjust retention of Decedent's assets by Latham at the expense of Ballantine. Latham's enrichment under the Will, and Ballantine's impoverishment, are justified because both are the direct result of Decedent's testamentary wishes.  Since I find there is no material factual dispute and Latham is entitled to judgment as a matter of law on Ballantine's unjust enrichment claim, I recommend that the Court dismiss that claim.

## D. There is no Evidence that Latham Committed Equitable Fraud.

Ballantine alleges that Latham made false representations to gain access to Decedent's finances and to induce him to change his position so that she could enrich herself, and that Decedent relied on those representations, resulting in injury to himself and the Estate.[73]  Latham responds that Ballantine has failed to plead facts to show any false representations by Latham to Decedent or Ballantine, or that Latham induced Decedent to execute the Will or the 2020 POA to Ballantine's detriment.[74]  She further contends that Ballantine has not alleged that Latham "misappropriated funds, stole the Estate's assets or used [the] assets improperly."[75]

---

[72] *Hill v. Hill*, 211 A.2d 914, 916 (Del. 1965).

[73] D.I. 9, ¶¶ 60-63.

[74] MSJ, at 11-12.

[75] *Id.*, at 11.

18

"A claim of negligent misrepresentation, or equitable fraud, requires proof of all of the elements of common law fraud except that plaintiff need not demonstrate that the misstatement or omission was made knowingly or recklessly."[76] "To succeed on a fraud claim, Plaintiff must meet heightened pleading standards requiring particularized facts. Pleading fraud requires allegations of (1) a false representation of material fact; (2) the defendant's knowledge that the representation was false or reckless indifference to the truth; (3) an intent to induce action or inaction; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) resulting damages."[77] In addition, under Court of Chancery Rule 9(b), fraud must be plead with particularity.[78]

> To satisfy Rule 9(b), a complaint must allege: (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations. The particularity requirement requires a plaintiff to allege the circumstances of the fraud with detail sufficient to apprise the defendant of the basis for the claim.[79]

---

[76] *Fortis Advisors LLC v. Dialog Semiconductor PLC* ("*Dialog Semiconductor*"), 2015 WL 401371, at *9 (Del. Ch. Jan. 30, 2015) (internal quotation marks and citations omitted).

[77] *Seiden v. Kaneko*, 2015 WL 7289338, at *12 (Del. Ch. Nov. 3, 2015) (internal quotation marks and citations omitted).

[78] Ct. Ch. R. 9(b); *see, e.g., Fortis Advisors LLC v. Johnson & Johnson*, 2021 WL 5893997, at *12 (Del. Ch. Dec. 13, 2021).

[79] *Dialog Semiconductor*, 2015 WL 401371, at *6 (internal quotation marks and citations omitted).

Here, there are no pled facts in the Amended Complaint alleging that Latham made a false representation to Decedent (or Ballantine) intending to induce Decedent to execute the Will or the 2020 POA, or that Decedent relied on such a representation by Latham when he altered those documents, or that he suffered damages as a result.[80] In addition to offering no evidence to support the fraud claim, Ballantine fails to meet Rule 9(b)'s heightened pleading standard. I recommend that the Court dismiss Ballantine's equitable fraud claim.

### E. Ballantine's Remaining Claims are Dismissed.

First, I consider Ballantine's request for an accounting. She asks the Court to require that Latham make a full accounting of the Estate, including payments made to Latham before and after Decedent's death, so that Ballantine can "determine any just portion that she should ha[ve] received, if any, and any assets that accrue to the Estate."[81] "[O]nly the beneficiaries of a will would have standing to seek an accounting as to assets passing under it."[82] With the determination that the Will is

---

[80] And, any equitable fraud damages would affect only Latham as the sole beneficiary of the Estate under the Will. *See supra* note 66.

[81] D.I. 9, ¶ 65.

[82] *Tunnell v. Stockley*, 2006 WL 452780, at *2 (Del. Ch. Feb. 15, 2006).

valid, Ballantine does not have standing to seek an accounting of assets in the Estate, since she has no direct interest in the Estate.[83]

Next, I address Ballantine's request that the Court declare that all of Decedent's property "should be deemed part of a constructive trust to prevent unjust enrichment of Latham who owed a fiduciary duty to [Decedent and the Estate]."[84] "A constructive trust is an 'implied' trust that a court imposes over property when a defendant's fraudulent, unfair, or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty."[85] "[It] is a remedy that relates to specific property or identifiable proceeds of specific property."[86] Here, there is no evidence to support that Latham's conduct has been fraudulent, unfair, or unconscionable, or that Latham was unjustly enriched at Decedent's or the Estate's expense, so there is no basis to impose the remedy of a constructive trust.

Finally, I consider Ballantine's claim for removal of Latham as executrix of the Estate since she "secured the role of Administrator improperly."[87] Again,

---

[83] D.I. 2; *see supra* note 66. And, any breaches of Latham's fiduciary duty as Decedent's agent before his death would affect only her as sole beneficiary of the Estate.

[84] D.I. 9, ¶ 67.

[85] *Mercer v. Mercer*, 228 A.3d 410, §9 (Del. 2020) (ORDER) (citing *Adams v. Jankouskas*, 452 A.2d 148, 151-52 (Del. 1982)).

[86] *Hogg v. Walker*, 622 A.2d 648, 652 (Del. 1993).

[87] D.I. 9, ¶ 69.

Ballantine has no interest in the Estate and no standing to seek Latham's removal as executrix. Further, there is no basis to remove Latham as executrix, since the evidence does not show that she neglected her "official duties" or breached any fiduciary duty in that role.[88]

## F. Attorneys' Fees, Costs and Interest

Latham seeks attorneys' fees, costs and pre-judgment interest.[89] She asks for the award of attorneys' fees and costs incurred to defend against the Amended Complaint since it was "filed without any legal purpose and directed to be vengeful and malicious."[90] I view this argument as a request for attorneys' fees under the bad faith exception to the American Rule. "Delaware follows the 'American Rule,' which provides that each party is generally expected to pay its own attorneys' fees regardless of the outcome of the litigation."[91] A well-recognized equitable exception to the American Rule, which applies only in "extraordinary cases," is where the "losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive

---

[88] *See* 12 *Del. C.* § 1541(a); *Thomas & Agnes Carvel Found. v. Carvel*, 2008 WL 4482703, at *10 (Del. Ch. Sept. 30, 2008), *aff'd,* 970 A.2d 256 (Del. 2009).

[89] Answer, at 9. She seeks interest from the date the Complaint was filed until its dismissal for her loss of access to Estate assets during that time. *Id.*

[90] MSJ, at 14.

[91] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017) (citation omitted); *see also ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558 (Del. 2014).

reasons.'"[92]  Courts have "found bad faith where parties have unnecessarily prolonged or delayed litigation, falsified records or knowingly asserted frivolous claims."[93]  To find bad faith, a party must have acted in subjective bad faith, which "involves a higher or more stringent standard of proof, *i.e.,* 'clear evidence.'"[94]  Although there are reasons to consider awarding attorneys' fees in this instance, I find that the high standard for awarding attorneys' fees for bad faith has not been met.[95]  I do not find the evidence shows that Ballantine has acted for oppressive reasons, unnecessarily delayed the litigation, or knowingly asserted frivolous contentions.  Accordingly, I recommend that the Court decline to shift attorneys' fees in this matter.

Similarly, I find that the award of pre-judgment interest in this case is not warranted.  "In equity, the award of pre-judgment interest is allowed as a matter of discretion."[96]  "[P]rejudgment interest is normally awarded on a claim for a specific

---

[92] *Brice v. State, Dep't of Correction*, 704 A.2d 1176, 1179 (Del. 1998) (citations omitted).

[93] *Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005) (quoting *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 546 (Del. 1998)) (internal quotation marks omitted); *see also RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816, 877 (Del. 2015) (citation omitted).

[94] *Arbitrium (Cayman Islands) Handels AG v. Johnston*, 705 A.2d 225, 232 (Del. Ch. 1997), *aff'd,* 720 A.2d 542 (Del. 1998) (citations omitted).

[95] In so finding, I consider, in part, the substance of Ballantine's claims (as discussed in this report) and her *pro se* status.

[96] *Boush v. Hodges*, 1996 WL 700232, at *2 (Del. Ch. Dec. 2, 1996); *see also Cliff House Condo. Council v. Capaldi*, 1997 WL 33177188, at *1 (Del. Ch. May 28, 1997).

amount to grant complete relief."[97]  This is not a claim for a specific amount and there is not sufficient evidence of losses suffered by Latham or the Estate during this litigation to justify an award of pre-judgment interest.[98]  Therefore, I recommend that the Court decline to award pre-judgment interest in this case.

Finally, Court of Chancery Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."[99]  I recommend that the Court award court costs under Rule 54(d) in an amount to be determined.  Latham's counsel shall submit an affidavit detailing court costs within twenty (20) days after this report becomes final.

## IV.  CONCLUSION

For the reasons set forth above, I recommend that the Court grant Kristen Latham's motion for summary judgment and dismiss all of Karrie Heathcote Ballantine's claims and her Amended Complaint in its entirety.  I also recommend

---

[97] *Cliff House Condo. Council*, 1997 WL 33177188, at *1.

[98] There is no evidence that Latham's legacy payment under the Estate has been delayed because of this litigation. The Will was admitted to probate on April 6, 2022, this action was filed on June 3, 2022 and this decision issued on October 29, 2022, less than seven months after the Estate was opened in the Register of Wills.  Under 12 *Del. C.* §2312(a), legacies are payable one year from the date of the first appointment of a personal representative, which would be April 6, 2023.

[99] *See Lynch v. Gonzalez,* 2020 WL 5587716, at *6 (Del. Ch. Sept. 18, 2020), *judgment entered* (Del. Ch. 2020) (citing Ct. Ch. R. 54(d)); *Braga Inv. & Advisory, LLC v. Yenni Income Opportunities Fund I, L.P.*, 2020 WL 5416516, at *1 (Del. Ch. Sept. 8, 2020) (ORDER) ("Costs do not include 'the expense of computer legal research, transcript fees, miscellaneous expenses (such as travel and meals), and the cost of photocopying.'")(citations omitted)).

24

that the Court deny Kristen Latham's requests for attorneys' fees and pre-judgment interest, and grant her request for court costs.  This is a final Master's Report, and exceptions may be taken under Court of Chancery Rule 144.

Sincerely,

*/s/ Patricia W. Griffin*
Master Patricia W. Griffin

25